IN RE STACY G.*
(AC 25401)

Schaller, Flynn and Gruendel, Js.**

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued February 9, 2005—officially released March 21, 2006

*Scott W. Sawyer*, with whom, on the brief, was *Nicholas Grimaldi, Jr.,* for the appellant (respondent Joseph G.).

*David P. Gaccione*, with whom was *Lori Kneeland Hellum*, guardian ad litem, for the appellees (David Y. et al.).

*Lori Kneeland Hellum* filed a brief for the minor child.

GRUENDEL, J. The respondent father[1] appeals from the judgment of the trial court denying his motion to transfer guardianship of his minor child to him from her guardians, his sister and brother-in-law. On appeal, the respondent claims that the court's rulings on certain evidentiary matters and its denial of his motion for a continuance were improper and so prejudicial that he was denied the right to a fair hearing. We agree and reverse the judgment of the trial court.

The facts relevant to the disposition of respondent's appeal are as follows. On August 4, 1999, the child, then two years old, was removed by the department of children and families (department) from the care and custody of the respondent and his wife, who is the child's mother, and placed in foster care. The child was adjudicated to be neglected and was committed to the care of the petitioner, the commissioner of the department (commissioner). On November 16, 1999, the commissioner placed the child in the care of the guardians. Approximately sixteen months later, on April 3, 2001, by accord signed by the parents and accepted by the court, the child's legal guardianship was transferred to the guardians, and her commitment to the commissioner was revoked. The respondent's parental rights never were terminated, and he has had visitation with the child throughout the years.

On July 18, 2002, the respondent wrote a letter to the court that was treated as a motion to open the transfer of guardianship and to restore the child's guardianship to him. On March 11, 2004, the respondent obtained a court order releasing the department's files in the matter, including any court documents and any medical or psychological records and reports, to Rene Kohanski,

---

[1] The initial neglect petition named both the father and mother as respondents. Because this opinion concerns only the father's request to transfer guardianship, we refer to him as the respondent.

a forensic psychologist, for the limited purpose of conducting a psychological evaluation of the respondent, which was to be conducted prior to the hearing on his motion.

On April 8, 2004, before the evaluation had been completed, the court held the hearing. On direct examination, the respondent testified about several aspects of his life that, if credited by the court, could have demonstrated that cause for the child's placement with the guardians no longer existed.[2] At the conclusion of the respondent's case-in-chief, the guardians moved for judgment, claiming that the respondent had not made out a prima facie case. The court denied the motion, stating that it "would like to have more evidence on the best interests of the child, focusing on [the respondent] and not so much on the child. I would like to hear evidence directly relating to the child." The guardians then testified about circumstances that, if credited by the court, could have demonstrated that it would not be in the child's best interest to return to the respondent's custody.[3] At the conclusion of the hearing, the

[2] The respondent testified that he resided in a well maintained, two-family house with two bedrooms, that he was in good health, that he had an income of $1500 per month, that he was not using alcohol or illegal drugs, that he had not been arrested recently, that he was not on probation and that he was well groomed. He testified that he had completed various programs that had been suggested by the department, including parenting education and anger management programs, and testified generally about what he had learned in those programs.

[3] The child's aunt testified that during one of the respondent's supervised visits, he appeared to be medicated and passed out on the couch with the child in his arms. She further testified that the child, wanting to get away, began crying, but that the respondent did not wake up. After waiting several minutes to see if the respondent would wake up, which he did not, she moved his arms and took the child from him. The child's aunt also testified that during a different supervised visit, the respondent passed out in his vehicle after medicating himself and that he still had a syringe in his hand when she checked on him forty-five minutes later. Moreover, she testified that the child, upon returning from visits with the respondent, would have bad temper tantrums and would urinate on the floor at home and at school. After a four week hiatus in visitation, however, the child's behavior improved.

court rendered judgment orally, denying the respondent's motion to transfer guardianship.[4] This appeal followed.

On appeal, the respondent claims that he was denied a fair hearing on his motion because the court improperly (1) admitted psychological reports into evidence and took judicial notice of their content, and (2) denied his request for a continuance that would have allowed him the opportunity to obtain rebuttal evidence as to the reports.[5] We agree with the respondent that the court improperly admitted certain hearsay evidence, consisting of three reports, and improperly denied the

---

[4] The record suggests that the hearing proceeded in conformity with a burden shifting analysis. Our Supreme Court has held that a natural parent, whose child has been committed to the custody of a third party, is entitled to a hearing to demonstrate that no cause for commitment still exists. *In re Juvenile Appeal (85-BC)*, 195 Conn. 344, 367, 488 A.2d 790 (1985) (children committed to custody of grandmother). The initial burden is placed on the "persons applying for the revocation of commitment to allege and prove that cause for commitment no longer exists." (Internal quotation marks omitted.) *In re Cesar G.*, 56 Conn. App. 289, 292–93, 742 A.2d 428 (2000). If the party challenging the commitment meets that initial burden, the commitment to the third party may then be modified if such change is in the best interest of the child. *In re Juvenile Appeal (85-BC)*, supra, 367. The burden falls on the persons vested with guardianship to "prove that it would not be in the best interests of the child to be returned to his or her natural parents." (Internal quotation marks omitted.) *In re Cesar G.*, supra, 293. We do not reach the question of whether that burden shifting analysis applies when, as here, the party seeking transfer of guardianship has voluntarily given up guardianship.

[5] The respondent frames his claims on appeal as follows: "I. The trial court's rulings on certain evidentiary matters were clearly erroneous and severely prejudiced the trial court's ruling on [the respondent's] motion for restoration of guardianship. II. The trial court's conclusions of law were legally and logically incorrect and do not find support in the facts that appear in the record. III. The trial court's denial of [the respondent's] motion for restoration of guardianship was in error, as the trial court used the improper standard in rendering its decision. IV. [The] [t]rial court's erroneous findings and conclusions of law improperly denied [the respondent's] fundamental due process rights."

In reviewing the respondent's brief, however, we conclude that the substance of those claims is characterized more properly as set forth in the text of this opinion.

respondent's motion for a continuance so that he would have an opportunity to rebut that evidence through the testimony of Kohanski.

I

We first review the court's rulings concerning the admissibility of the three reports. "Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing . . . of substantial prejudice or injustice. . . . Additionally, it is well settled that even if the evidence was improperly admitted, the [party challenging the ruling] must also establish that the ruling was harmful and likely to affect the result of the trial." (Citation omitted; internal quotation marks omitted.) *In re Latifa K.*, 67 Conn. App. 742, 751–52, 789 A.2d 1024 (2002).

During the April 8, 2004 hearing, the court admitted into evidence three court-ordered evaluations of the respondent: A March, 2001 report by Nancy Randall, a clinical psychologist; a March, 2001 report by Scott Stevens, a licensed marriage and family therapist; and a March, 2003 report also by Stevens. Each of those reports contained allegations by persons other than the author that the respondent had sexually abused another child.[6] The respondent, however, had never been arrested in connection with those allegations.

The respondent argues that it was improper for the court to admit those reports into evidence without requiring that the guardians show that Randall and Stevens were unavailable to testify.[7] When neither Randall

[6] The respondent was given the opportunity to raise questions about the credibility of the child referenced in those reports, and the court admitted evidence in which another judge had found the alleged victim's credibility concerning her allegations of sexual abuse in doubt.

[7] The respondent framed the issue in terms of the unavailability of the authors. Our review of the evidentiary claim is not limited to the question of whether they were available, but rather addresses the broader issue of whether the reports constituted or contained inadmissible hearsay.

nor Stevens appeared at the hearing for cross-examination, the respondent objected to the admission of their reports on the ground of hearsay.[8] Moreover, at oral argument before the court, the respondent stated that he was not aware in advance of the hearing that the reports would be offered as exhibits for the court's review.

We agree that admission of the reports was improper. First, the reports were themselves inadmissible hearsay. The respondent was not given an opportunity to cross-examine Randall or Stevens on their reports. Second, the reports contained inadmissible hearsay from individuals other than the respondent or the author. " 'Hearsay' means a statement, other than one made by the declarant while testifying at the proceeding, offered in evidence to establish the truth of the matter asserted"; Conn. Code Evid. § 8-1 (3); and it is inadmissible unless a recognized exception applies. See id., § 8-2.

We acknowledge that in a trial to the court, there is a certain latitude; judges are expected, more so than jurors, to be capable of disregarding incompetent evidence. See *Ghiroli* v. *Ghiroli,* 184 Conn. 406, 408–409, 439 A.2d 1024 (1981). We recognize, as well, that reports, including the ones at issue, sometimes may find their way, albeit improperly, into court files, particularly in family or juvenile cases. That in itself does not make them admissible evidence, nor does it entitle a trial judge to take judicial notice of them. Accordingly, we

---

[8] The reports referred to by the respondent were offered by the guardians' counsel as follows: "I would ask the court to mark [the reports] as full exhibits. They are, in fact, Your Honor, part of the record, and I would ask the court to take judicial notice of those in that they are so much already in the juvenile file in this juvenile case."

The guardians, thus, introduced into the case confusion about whether the reports were admitted as exhibits or whether they were documents of which the court took judicial notice. The court admitted the documents as full exhibits and did not take judicial notice of them. The reports, however, already were included in the court file.

conclude that the court abused its discretion by admitting the three prior psychological reports into evidence.

We further conclude that the respondent has met his burden to establish that the ruling was harmful. Although the court did not make specific findings concerning the content of any of the three reports, we consider it significant that the court specifically made reference to the fact that it had read the reports just prior to announcing that it was ready to make its decision. That temporal nexus is an indication on the record that the hearsay reports were not disregarded.

II

We next review the court's ruling denying the respondent's motion for a continuance so that he could present testimony from Kohanski.

"A trial court holds broad discretion in granting or denying a motion for a continuance. Appellate review of a trial court's denial of a motion for a continuance is governed by an abuse of discretion standard that, although not unreviewable, affords the trial court broad discretion in matters of continuances. . . . An abuse of discretion must be proven by the appellant by showing that the denial of the continuance was unreasonable or arbitrary. . . . One relevant factor that a court may consider in evaluating a motion for a continuance is the perceived legitimacy of the reasons proffered in support of the motion." (Citations omitted; internal quotation marks omitted.) *Hyllen-Davey* v. *Plan & Zoning Commission*, 57 Conn. App. 589, 599–600, 749 A.2d 682, cert. denied, 253 Conn. 926, 754 A.2d 796 (2000).

In the unique circumstances of this case, the denial of the continuance was an abuse of discretion. Only a few weeks before the trial, another judge had given the respondent the opportunity to have department files and records released to Kohanski, who had agreed to

conduct a psychological evaluation of the respondent. That examination had not yet been completed when the court denied the continuance. In denying the continuance, the court stated, "I do so because I don't believe that the [forensic psychologist] could look at the reports and give me information that would somehow change what has gone on in the courtroom today." The court, in effect, predetermined its view of the evidence that the respondent sought to obtain and present.

The judgment is reversed and the case is remanded for a new hearing in accordance with law.[9]

In this opinion the other judges concurred.

---

[9] We do not make any judgment on what the ultimate decision should be on remand. That is a decision that should be made by the trial court on the basis of the admissible evidence and the best interest of the child.