IN RE CAMERON C.*
(AC 27780)

Bishop, Lavine and Pellegrino, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued May 22—officially released September 18, 2007

*Carolyn L. Jennings*, for the appellant (respondent grandmother).

*Sherelyn M. Labowski*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Susanne D. McNamara* filed a brief for the appellee (respondent father).

*Opinion*

PELLEGRINO, J. This is an appeal from the judgment of the trial court reinstating guardianship of a minor child, C, in his biological father, subject to six months of protective supervision by the department of children and families (department) and other orders concerning

visitation for both the respondent, C's grandmother,[1] and C's mother. The respondent appeals, claiming that the court (1) failed to rely on General Statutes § 46b-56 (c) in resolving this dispute and, instead, applied the provisions of General Statutes § 46b-129 (m), and (2) improperly applied § 46b-129 (m) in granting the father's motion to revoke commitment. We disagree with the respondent and affirm the judgment of the trial court.

The record discloses the following facts and procedural history relevant to the respondent's appeal. C lived primarily at the home of the respondent from his birth in October, 1999, until March, 2004. In September, 2003, the father left Connecticut to reside in Florida. In December, 2003, C was suffering from the flu, had a high grade fever and needed emergency medical attention. His mother was not available to care for him, and the hospital where he was taken refused treatment absent the consent of a parent. The respondent went to Probate Court and obtained immediate temporary custody. She also made a referral to the department, alleging that the mother was not caring for C and had passed responsibility for the child to the respondent. On December 9, 2003, the Probate Court issued an order of temporary custody that removed custody from the mother and awarded it to the respondent. The department subsequently brought a neglect petition on June 15, 2004. On February 16, 2005, the trial court adjudicated the child neglected, with the mother pleading nolo contendere and the father standing silent. In its ruling, the court also transferred guardianship to the respondent with six months protective supervision.

[1] The record characterizes the grandmother and the father as respondents. For purposes of this appeal and this opinion, all references to the respondent shall refer solely to the grandmother because she is appealing from the judgment of the trial court. The grandmother was C's guardian prior to the reinstatement of the father's guardianship.

On May 31, 2005, the father moved to restore his guardianship rights and for sole custody of the child. The respondent contested the father's motion, and the court held fifteen days of hearings on the matter. At the conclusion of the hearings, the court ruled that the cause for the transfer of guardianship no longer existed and that the respondent had failed to prove that it would not be in the best interest of the child to be returned to his father. Furthermore, the court found that placement with the father was in the child's best interest. In reaching its conclusion that C's father had satisfied his burden of showing that the cause for transfer of guardianship no longer existed, the court found that C's father consistently attended counseling sessions, completed parenting classes and an anger management assessment, and had stable employment and appropriate housing for the child. As a result of its findings, the court reinstated guardianship in the father and ordered that the department provide protective supervision for six months. The court also ordered that the respondent and C's mother were to have visitation rights. This appeal followed. Additional facts will be set forth as necessary.

I

The respondent's first claim is that the court failed to apply § 46b-56 (c)[2] in resolving this dispute and, instead,

[2] General Statutes § 46b-56 (c) provides: "In making or modifying any order as provided in subsections (a) and (b) of this section, the court shall consider the best interests of the child, and in doing so may consider, but shall not be limited to, one or more of the following factors: (1) The temperament and developmental needs of the child; (2) the capacity and the disposition of the parents to understand and meet the needs of the child; (3) any relevant and material information obtained from the child, including the informed preferences of the child; (4) the wishes of the child's parents as to custody; (5) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (6) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the

applied the provisions of § 46b-129 (m)[3] in granting the father's motion to transfer custody of his minor child. Specifically, she claims on the basis of the language used in § 46b-56, that the subsections of that statute apply to "any" custody dispute and that the court's use of the rebuttable presumption found in General Statutes § 46b-56b, which provides that custody should be placed with a parent rather than a nonparent, was legally incorrect. We disagree with the respondent and conclude that the court applied the correct legal standard to the father's motion for custody and guardianship.

We begin by addressing the appropriate standard of review. "The application of a statute to a particular set

parents' dispute; (8) the ability of each parent to be actively involved in the life of the child; (9) the child's adjustment to his or her home, school and community environments; (10) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (11) the stability of the child's existing or proposed residences, or both; (12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (13) the child's cultural background; (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; (15) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (16) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b. The court is not required to assign any weight to any of the factors that it considers." The language relied on by the respondent was added to § 46b-56 by Public Acts 2005, No. 05-258, § 3, which went into effect on October 1, 2005. For purposes of this opinion, we assume that the provisions of § 46b-56 (c) would apply to the court's determinations made in response to the father's May 31, 2005 motion for custody.

[3] General Statutes § 46b-129 (m) provides: "The commissioner, a parent or the child's attorney may file a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interests of such child or youth, the court may revoke the

of facts is a question of law." *In re Nasia B.*, 98 Conn. App. 319, 328, 908 A.2d 1090 (2006). We therefore review the respondent's claim under the plenary standard of review. See id.

### A

The first step in determining which statute applies to the present case is to categorize the motion that was before the court. The father's motion, filed May 31, 2005, pursuant to Practice Book § 35a-20,[4] was labeled a "Motion to Transfer Custody and Guardianship." The label on the motion, however, does not control our analysis. We must look to the substance of the relief sought by the motion rather than its form because "[t]o hold [a litigant] strictly to the label on his filing would exalt form over substance." *Whalen* v. *Ives*, 37 Conn. App. 7, 17, 654 A.2d 798, cert. denied, 233 Conn. 905, 657 A.2d 645 (1995); see also *In re Haley B.*, 262 Conn. 406, 413, 815 A.2d 113 (2003). In substance, the father's motion sought the return of C to his custody without protective supervision. Practice Book § 35a-16 provides in relevant part that "any modification motion to return the child to the custody of the parent without protective supervision shall be treated as a motion for revocation of commitment."[5] The motion must, therefore, be

commitment of such child or youth. No such motion shall be filed more often than once every six months."

[4] Practice Book § 35a-20 provides in relevant part: "Whenever a parent or legal guardian whose guardianship rights to a child were removed and transferred to another person by the superior court for juvenile matters seeks reinstatement as that child's guardian, the parent or legal guardian may file a petition with the court that ordered the transfer of guardianship."

[5] Practice Book § 35a-16 provides: "Motions to modify dispositions are dispositional in nature based on the prior adjudication and the judicial authority shall determine whether a modification is in the best interest of the child upon a fair preponderance of the evidence. Unless filed by the commissioner of children and families, any modification motion to return the child to the custody of the parent without protective supervision shall be treated as a motion for revocation of commitment."

treated as a motion to revoke commitment, regardless of the label appearing on the motion.

We now turn our attention to the law that governs motions to revoke commitment. General Statutes § 46b-129 (m) sets forth the procedure by which a commitment may be challenged and vests primary authority for revocation of commitment with the trial court. Section 46b-129 (m) provides that a parent may file a motion to revoke a commitment, and, upon a finding that no cause for commitment exists, and that such revocation is in the best interest of the child, the court may revoke the commitment.[6] This court's analysis in *In re Stacy G.*, 94 Conn. App. 348, 892 A.2d 1034 (2006), provides guidance on applying § 46b-129 (m). "[A] natural parent, whose child has been committed to the custody of a third party, is entitled to a hearing to demonstrate that no cause for commitment still exists. . . . The initial burden is placed on the persons applying for the revocation of commitment to allege and prove that cause for commitment no longer exists. . . . If the party challenging the commitment meets that initial burden, the commitment to the third party may then be modified if such change is in the best interest of the child. . . . The burden falls on the persons vested with guardianship to prove that it would *not* be in the best interests of the child to be returned to his or her natural parents." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 352 n.4. A close review of the record clearly reflects that the court considered the father's motion under the test set forth in *In re Stacy G.* We therefore conclude that the court properly applied the law.

---

[6] Chapter 815t of the General Statutes, comprising General Statutes §§ 46b-120 through 46b-159, inclusive, sets forth the substantive and procedural laws governing juvenile matters. See *In re Prudencio O.*, 229 Conn. 691, 697, 643 A.2d 265 (1994).

B

The respondent claims that the court should have applied the factors set forth in § 46b-56 (c), rather than § 46b-129 (m), to guide its determination of what was in the best interest of the child. Specifically, she claims on the basis of the broad language used in § 46b-56, that subsection (c) applies to "any" custody dispute. We find no merit to her argument.

Pursuant to General Statutes § 1-2z, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Our Supreme Court has noted that "[i]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." *Norwich Land Co.* v. *Public Utilities Commission*, 170 Conn. 1, 4, 363 A.2d 1386 (1975); *Lunn* v. *Cummings & Lockwood*, 56 Conn. App. 363, 372, 743 A.2d 653 (2000).

Chapter 815j of the General Statutes, comprising §§ 46b-40 through 46b-89, inclusive, sets out rights and remedies arising from "Dissolution of Marriage, Legal Separation and Annulment" actions. See, e.g., *Lamacchia* v. *Chilinsky*, 79 Conn. App. 372, 373 n.1, 830 A.2d 329 (2003); *Rosengarten* v. *Downes*, 71 Conn. App. 372, 381 n.5, 802 A.2d 170, cert. granted, 261 Conn. 936, 806 A.2d 1066 (2002) (appeal dismissed as moot December 31, 2002); *Calway* v. *Calway*, 26 Conn. App. 737, 745, 603 A.2d 434 (1992). Although it is recognized that headings or titles of legislation are not conclusive, they may, nonetheless, be valuable aids to construction and legislative intent. See *Burke* v. *Fleet National Bank*, 252 Conn. 1, 13, 742 A.2d 293 (1999) (title of statute not

determinative of, but may provide evidence of, statutory meaning); *Algonquin Gas Transmission Co.* v. *Zoning Board of Appeals*, 162 Conn. 50, 55, 291 A.2d 204 (1971); *Connecticut Light & Power Co.* v. *Overlook Park Health Care, Inc.*, 25 Conn. App. 177, 179, 593 A.2d 505 (1991). The plain meaning of § 46b-56, read within the context of related statutes within chapter 815j, makes clear that this provision is intended to apply only in dissolution of marriage, legal separation and annulment actions.[7] There is no authority for the respondent's argument that the use of the word "any" in § 46b-56 encompasses circumstances outside of those clearly provided for in the chapter heading. To extend the provisions of § 46b-56 beyond dissolution proceedings would have the impermissible consequence of undermining the statutory scheme of commitment proceedings. See *Calway* v. *Calway*, supra, 744–45 (refusing to apply spousal obligations from chapter 815e after dissolution of marriage occurred under chapter 815j). As noted by the court, § 46b-56 (c) is inapplicable because this case does not arise from a dissolution of marriage, legal separation or annulment action.[8]

[7] Prior to January 1, 2006, General Statutes § 46b-56 was entitled "Superior Court orders re custody, care, therapy, counseling and drug and alcohol screening of minor children or parents in actions for dissolution of marriage, legal separation and annulment. Access to records of minor children by noncustodial parent. Parenting education program." We note that in the 2006 supplement to the General Statutes, the reference to dissolution of marriage, legal separation and annulment was removed from the title of the statute. The current title of § 46b-56 is "Orders re custody, care, education, visitation and support of children. Best interests of the child. Access to records of minor child by noncustodial parent. Orders re therapy, counseling and drug or alcohol screening." The title of chapter 815j and the statute's location within that chapter, however, have not changed. The change in title was not the result of any amendment to § 46b-56. See Public Acts 2005, No. 05-258, § 3.

[8] We note that even if we were to accept the respondent's argument that this case must be analyzed as a custody case, the court expressly concluded that it *would* be in the child's best interest to be returned to his father. This conclusion cannot be overturned unless the trial court abused its discretion in making such a ruling. As set forth in part II B, there were ample facts

## C

The respondent also claims that the court was legally incorrect in applying the rebuttable presumption of § 46b-56b to the father's motion.[9] Section 46b-56b provides that in a dispute between a parent and a nonparent, there is a rebuttable presumption that it is in a child's best interest to be in the custody of the parent. We acknowledge that this presumption is not directly applicable in this case for the same reason that § 46b-56 is inapplicable—both sections appear in a chapter different from that in which § 46b-129 (m) appears.[10] Contrary to the argument set forth in the respondent's brief, however, our review of the record indicates that the court did not directly apply § 46b-56b to the proceedings before it. The court's ruling simply states that in applying the *In re Stacy G.* framework; see *In re Stacy G.*, supra, 94 Conn. App. 352 n.4; it was "aided" by the presumption that it is in the child's best interest to be in the custody of his natural parent.[11]

We need not, however, simply rest our conclusion on semantics because revocation of commitment proceedings under § 46b-129 (m) is conducted with a presumption similar to that found in § 46b-56b. See *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 659, 420

in the record from which the court could have made its determination that placement with the father was in the child's best interest.

[9] General Statutes § 46b-56b provides: "In any dispute as to the custody of a minor child involving a parent and a nonparent, there shall be a presumption that it is in the best interest of the child to be in the custody of the parent, which presumption may be rebutted by showing that it would be detrimental to the child to permit the parent to have custody."

[10] See part I B.

[11] The court's ruling states: "The court's conclusion regarding the best interest of the child is 'aided' by the provisions of General Statutes § 46b-56b: 'In any dispute as to the custody of a minor child involving a parent and a nonparent, there shall be a presumption that it is in the best interest of the child to be in the custody of the parent, which presumption may be rebutted by showing that it would be detrimental to the child to permit the parent to have custody.'"

A.2d 875 (1979). Under the *In re Stacy G.* framework, after the natural parent establishes that the cause for commitment no longer exists, the guardian is saddled with the burden of establishing that placement with the natural parent is not in the child's best interest. The natural parent, therefore, has the benefit of a presumption that revocation of commitment is in the child's best interest. *In re Stacy G.*, supra, 94 Conn. App. 353 n.4. As our Supreme Court has stated, "parents are entitled to the presumption, absent a continuing cause for commitment, that revocation will be in the child's best interests unless the [guardian] can prove otherwise." *In re Juvenile Appeal (Anonymous)*, supra, 659.[12] On the basis of the record, we conclude that the court properly applied *In re Stacy G.*[13]

## II

The respondent next claims that the court's application of § 46b-129 (m)[14] was legally and logically incorrect. She argues that the court failed to give proper weight to the evidence she presented at trial. Specifically, she refers to evidence she proffered that showed (1) that the father financially abandoned C, even after the court adjudicated C neglected, (2) that she is C's

---

[12] The overarching notion that a fit parent has the fundamental right to make child rearing decisions unless that would cause real and significant harm to the child has a constitutional basis. See *In re Joshua S.*, 260 Conn. 182, 204, 796 A.2d 1141 (2002); see also *Troxel* v. *Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); *Crockett* v. *Pastore*, 259 Conn. 240, 789 A.2d 453 (2002); *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002).

[13] Because we have concluded that the court did not rely on General Statutes §§ 46b-56 (c) or 46b-56b, we need not consider the respondent's argument with regard to the distinction between visitation and custody disputes.

[14] The crux of the respondent's claim is structured in the context of the court's application of General Statutes § 46b-56b being legally and logically incorrect. On the basis of our analysis in part I, we construe her claim to be that the court ultimately reached the wrong conclusion in its application of General Statutes § 46b-129 (m).

psychological parent, (3) that she had a close relationship with C for more than six years, (4) that her home is the only home C has ever known and (5) that the attorney for C thought custody should remain with her. We disagree.

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.) *In re Patricia C.*, 93 Conn. App. 25, 30, 887 A.2d 929, cert. denied, 277 Conn. 931, 896 A.2d 101 (2006).

Keeping that deferential standard of review in mind, we now set forth the legal principles that guide our analysis. Section 46b-129 (m) provides in relevant part that "a parent . . . may file a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interests of such child or youth, the court may revoke the commitment of such child or youth. . . ." Under the *In re Stacy G.* framework, "[t]he initial burden is placed on the persons applying for the revocation of commitment to allege and prove that cause for commitment no longer exists. . . . If the party challenging the commitment meets that initial burden, the commitment to the third party may then be modified if such change is in the best interest of the child. . . . The burden falls on the persons vested with guardianship to prove that it would *not* be in the best interests of the child to be returned to his or her natural parents." (Citations

omitted; emphasis added; internal quotation marks omitted.) *In re Stacy G.*, supra, 94 Conn. App. 352 n.4.

The court first found that the father carried his initial burden of proving that cause for commitment no longer existed. There was ample evidence in the record to support the court's initial finding. The record indicates that the father consistently attended counseling sessions, completed parenting and an anger management assessment, had stable employment and appropriate housing for C, that the department and the guardian ad litem had reported that the father and C had had successful visitation, that a bond was developing between them and that the court-appointed psychologist, Nancy Randall,[15] had testified that the father understood his parental role and was demonstrating responsibility. The respondent argued that the circumstances that led to the initial commitment of C prevented the father from satisfying his initial burden. The court found that even if it assumed that those facts were true, the father had improved his situation, and the reason for the transfer of guardianship no longer existed. See *In re Cesar G.*, 56 Conn. App. 289, 294, 742 A.2d 428 (2000) ("[t]he court, in determining whether cause for commitment no longer exists, would obviously look to the original cause for commitment to see

---

[15] The respondent seeks plain error review; see Practice Book § 60-5; of the court's admission into evidence of the evaluation by Randall because the respondent did not object to the court's admission of any of Randall's reports at trial. The respondent argues that Randall had ex parte communication with the department prior to writing her report in violation of the rules of practice.

"The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 240, 881 A.2d 160 (2005). Because the respondent's claims here do not present the type of extraordinary situation that warrants plain error review, we decline to review them according to this standard.

whether the conduct or circumstances that resulted in commitment continue to exist"). Taken as a whole, there were sufficient facts from which the court could have reached its conclusion. In light of the facts and circumstances presented, we conclude that the court's finding was not clearly erroneous.

After the father successfully established that the cause for removal no longer existed, the burden shifted to the respondent to prove that it would *not* be in the best interest of the child to be returned to his father. "To determine whether a custodial placement is in the best interest of the child, the court uses its broad discretion to choose a place that will foster the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment. . . . We have stated that when making the determination of what is in the best interest of the child, [t]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . *A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference.* . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Emphasis in original; internal quotation marks omitted.) *In re Patricia C.*, supra, 93 Conn. App. 32–33. Guided by that deferential standard of review, we examine the evidence that was before the court to determine whether it abused its discretion in concluding that the respondent failed to prove that it would not be in the best interest of C to be returned to his father.

The court presided over fifteen days of trial in which thirteen witnesses testified and forty exhibits were entered into evidence. Among the evidence considered was the testimony of Randall; C's therapist, Jackie Mott; a social work supervisor at the department, Kimberly Tait; and C's guardian ad litem. These individuals had close contact with the parties involved in this case, and all opined that they supported reinstatement of guardianship with the father.

Randall testified that reunification with the father would be in C's best interest because of the father's improvement and renewed interest in his son. Randall reached this conclusion despite her testimony that C viewed the respondent as the psychological parent. Randall further testified that a continued relationship with the respondent would be essential and that C would experience an initial loss from being removed from his psychological parent but that such issues could be worked out with his new family and in therapy.

Mott testified that her recommendation was to place C with his father because the father was "a fine father, and there's no real reason why he shouldn't have his son." Although Mott testified that she never saw C and his father interact together, she testified that she had visited with C and his father on separate occasions and that she has continued to meet with the respondent and C's father in an attempt to establish civility between them. She believed that the transition of guardianship to the father should occur as soon as possible because of the friction between the father and the respondent. Mott further testified that C would experience an obvious adjustment period from leaving the respondent, his relatives and his mother in a different city but that he would do fine.

Tait testified that the father kept in contact with the department, engaged the department in its services,

submitted to random urine screens to rule out substance abuse, completed parenting classes and engaged in family therapy with the child. She further testified that the father's home was appropriate, that he had maintained continuous employment for two years and was then involved in a stable relationship. Finally, Tait testified that the interaction of the father and son was appropriate and that C enjoyed the time spent with his father.

The court, in its decision, clearly credited the referenced aspects of the testimony of the witnesses. On the basis of all the evidence, the court found that the respondent's concerns for C warranted monitoring of the father's restored guardianship for a period of time but were not proof that restoration of guardianship to the father was not in the best interest of C. The court ordered the reinstatement of guardianship to the father subject to six months of protective supervision by the department and also awarded visitation to both the respondent and C's mother. "[G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling. . . . [*Additionally, we*] *are not in a position to second-guess the opinions of witnesses, professional or otherwise, nor the observations and conclusions of the Juvenile Court when they are based on reliable evidence.*" (Emphasis in original; internal quotation marks omitted.) *In re Patricia C.,* supra, 93 Conn. App. 36. As our review of the record indicates, there were ample facts on which the court could conclude that the respondent failed to prove that it was not in the best interest of C to be returned to

his father. We conclude that the court did not abuse its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.