## IN RE SARAH S.*
### (AC 28807)
### (AC 28808)

Harper, Robinson and Foti, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued April 29—officially released September 30, 2008

*David B. Rozwaski*, for the appellant (respondent mother).

*Raymond J. Rigat*, for the appellant (respondent father).

*Colleen Broderick*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney

general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

ROBINSON, J. The respondent mother and the respondent father each appeal from the judgment of the trial court rendered in favor of the petitioner, the commissioner of children and families, terminating their parental rights with respect to their minor child, Sarah S. On appeal, both respondents claim that the court improperly (1) denied their motion to revoke the commitment of the child to the petitioner and to transfer guardianship to the paternal aunt, (2) terminated the respondents' parental rights when the petitioner failed to demonstrate a sufficient need or compelling reason for the termination and (3) terminated the respondents' parental rights without findings made by a jury in violation of their constitutional right to due process. The respondent father also claims (4) that the court improperly placed the burden of proof on the respondents with respect to the motion to revoke commitment and to transfer guardianship and with respect to the dispositional phase of the termination proceeding. We affirm the judgment of the trial court.

The court found the following facts. The respondents were married in 2001 and have one child, Sarah, born on July 8, 2002. The department of children and families (department) became involved with the respondents' family on May 24, 2004, after receiving a referral from a hospital. The social worker at the hospital informed the department that the respondent mother had come to the emergency room seeking pain medication that had not been prescribed. Her medical records revealed that she had tested positive for cocaine, opiates and benzodiazepines on April 26, 2004. When the hospital refused to give the respondent mother the medication, she became aggressive. When asked about Sarah, she

could not provide any specific information about the whereabouts of Sarah or who was caring for her.

As a result of the referral, the department began to provide services to the respondents' family to address issues of substance abuse, mental health, housing and employment stability and supervision of Sarah. The department referred the respondents to substance abuse evaluation and treatment, but the respondents failed to attend the scheduled evaluations. During this time, the respondents lived a transient lifestyle. In May, 2004, the respondents were living in Terryville. In June, 2004, the respondents were living in an apartment on P Street in Bristol. Thereafter, they were evicted from that apartment. At that time, the respondents were ineligible for public housing because of three prior evictions. In November and December, 2004, the respondents stayed with friends in Terryville.

The department received a second referral on December 2, 2004, from a family friend who was concerned that the respondents were homeless and had left Sarah in her care without provisions. In response, the petitioner invoked a ninety-six hour hold[1] and removed Sarah from the family friend's home. The next day, on December 3, 2004, the petitioner filed a motion for an order of temporary custody and a neglect petition, alleging that the respondents neglected Sarah by denying her proper care and attention and by permitting her to live under conditions, circumstances or associations injurious to her well-being. A preliminary hearing was held on the order of temporary custody on December 10, 2004. The court sustained the order of temporary custody.

On February 23, 2005, the respondents entered pleas of nolo contendere to the allegation that Sarah was

[1] See General Statutes § 17a-101g.

permitted to live under conditions injurious to her well-being, and the court adjudicated Sarah neglected and committed her to the care and custody of the petitioner. The court also ordered the respondents to keep all appointments with the department, to cooperate with the department's home visits and in-home services, to submit to random drug testing, to participate in substance abuse and mental health evaluation and treatment, to abstain from the use of illegal drugs, to abstain from abusing prescribed drugs, to visit Sarah as permitted, to secure and maintain adequate housing, to notify the department of their whereabouts and to notify the department promptly of family members to consider as a placement source for Sarah. In November, 2005, Sarah was transitioned to the foster care of her aunt, Suzanne W., whom Sarah had bonded with and who was willing to adopt Sarah.

In the months between the petitioner's assumption of custody of Sarah in December, 2004, and the termination trial in October, 2006, the respondents failed to comply with the court's orders despite the department's efforts to assist them. They failed to obtain and secure housing and continued to abuse drugs. Additionally, the respondents were involved in criminal activity.

On November 8, 2005, the petitioner filed a petition pursuant to General Statutes § 17a-112 (j) to terminate the respondents' parental rights on the ground that Sarah had been found to have been neglected and that the respondents had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, they could assume a responsible position in Sarah's life. On June 21, 2006, the respondent father filed a motion to revoke Sarah's commitment to the petitioner and to transfer her care, custody and guardianship to Suzanne W. The respondent mother and the attorney for Sarah joined the father

in this motion. The hearing on the motion was consolidated with the termination of parental rights trial in December, 2006. The court denied the motion to revoke commitment and to transfer guardianship to Suzanne W. The court further found that Sarah had been neglected, that the respondents had failed to achieve rehabilitation and could not do so within a reasonable time period and that termination of parental rights was in the best interest of Sarah. These appeals followed. Additional facts will be set forth as necessary.

I

The respondents argue that the court improperly denied the respondent father's motion to revoke Sarah's commitment to the petitioner and to transfer her care, custody and guardianship to Suzanne W. We disagree.

The respondent father argues that the court erroneously determined that the respondents failed to show that the cause for commitment of Sarah no longer existed. Specifically, he argues that "the court failed to recognize that a parent's capability to raise a child can be augmented by the support of an extended family member." Because Suzanne W. was willing to continue to care for Sarah, "the family itself worked out an effective plan for the care of the child [and] the causes of the child's original commitment, the [respondents'] ongoing substance abuse, homelessness and transience, were no longer obstacles to [the respondents'] care and control of [Sarah]."

Similarly, the respondent mother argues that the respondents showed that the cause for commitment no longer existed by offering a suitable and appropriate plan as an alternative to commitment, namely, that Suzanne W. was available and willing to be the legal guardian of Sarah.

In its memorandum of decision, the court stated: "[The respondents] have essentially conceded that the

original cause for Sarah's commitment still exists, since they both have admitted that they are not ready to care for Sarah. They both have admitted that they still have substance abuse issues they need to address, and [the respondent mother] has admitted that she still has mental health issues she needs to address. [The respondents] have clearly failed to prove by a preponderance of the evidence that the cause for commitment of Sarah no longer exists."[2] Further, the court concluded that the transfer of guardianship of Sarah to Suzanne W. would not be in Sarah's best interest. The court determined that "given [the respondents'] substance abuse and psychological issues and Sarah's age, a transfer of guardianship would clearly leave Sarah open to an uncertain future date and no feeling of permanency."

Our review of the respondents' claim that the cause for commitment no longer exists is controlled by General Statutes § 46b-129 (m), which provides in relevant part: "The commissioner, a parent or the child's attorney may file a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interests of such child or youth, the court may revoke the commitment of such child or youth. . . ." "The burden is clearly upon the persons applying for the revocation of commitment to allege and prove that cause for commitment no longer exists. Once that has been established, the inquiry becomes whether a continuation of the commitment will nevertheless serve the child's best interests." (Internal quotation marks omitted.) *In re Patricia C.*, 93 Conn. App. 25, 30, 887 A.2d 929, cert. denied, 277 Conn. 931, 896 A.2d 101 (2006).

---

[2] Practice Book § 35a-14 (c) provides in relevant part: "Whether to maintain or revoke the commitment is a dispositional question, based on the prior adjudication, and the judicial authority shall determine whether it is in the best interest of the child to maintain or revoke upon a fair preponderance of the evidence. . . ."

On appeal, our function is to determine whether the court's conclusion was legally correct and factually supported. We do not examine the record to determine whether the court could have reached a conclusion other than the one reached. *In re Cameron C.*, 103 Conn. App. 746, 757, 930 A.2d 826 (2007), cert. denied, 285 Conn. 906, 942 A.2d 414 (2008).

In the present case, there was ample evidence in the record to support the court's determinations. It was the respondents' burden, in applying for the revocation of commitment, to allege and prove that cause for commitment no longer existed. At the time of the trial, the respondents were still struggling with homelessness, substance abuse and mental health problems. Therefore, we conclude that the court's conclusion was legally correct and factually supported.

## II

The respondents next claim that the court's termination of their parental rights was improper because the petitioner failed to demonstrate a sufficient need or compelling reason for the termination. We disagree.

The respondent father argues that the termination of parental rights "violated both the [respondents'] and [Sarah's] due process rights, under both federal or state constitutions, to liberty, privacy and family integrity, because the family had arranged for a workable plan that met the permanency needs of the child, and the permanency standard required by the trial court was impermissibly vague." He further argues that "[t]erminating parental rights when transferring guardianship to the paternal aunt was available as a workable permanency plan was an arbitrary exercise of statutory authority by the trial judge, [and] . . . there was no compelling state interest in termination, where transfer of guardianship was reasonably available."

The respondent mother argues that the court erroneously determined that she had failed to achieve a sufficient degree of personal rehabilitation. She contends that she showed a clear desire to continue working toward regaining the custody of Sarah but that the department had failed to make reasonable efforts toward reunification because it failed to make available and to engage her in services that specifically instill healthy parenting skills.

Our standard of review on an appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. Our function is to determine whether the court's conclusion was legally correct and factually supported. We do not examine the record to determine whether a different conclusion might have been reached. Every reasonable presumption is made in favor of the trial court's ruling. See *In re Vincent B.*, 73 Conn. App. 637, 640–41, 809 A.2d 1119 (2002), cert. denied, 262 Conn. 934, 815 A.2d 136 (2003).

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Ryan R.*, 102 Conn. App. 608, 617–18, 926 A.2d 690, cert. denied, 284 Conn. 923, 924, 933 A.2d 724 (2007).[3]

---

[3] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is

The court determined, in its adjudicatory phase, that the department demonstrated by clear and convincing evidence that it had made reasonable efforts to reunify the family from the time Sarah was removed in December, 2004, to the filing of the termination petition in November, 2005. With respect to the efforts made by the department to assist the respondents in reunifying with Sarah, the record supports the court's finding that "[s]ubstance abuse testing and treatment for both [respondents], mental health counseling for [the respondent mother], housing referrals, visitation and transportation services were provided by the [department]. Despite the [department's] reasonable efforts, [the respondents] were not willing to benefit from reunification efforts as demonstrated by their failure to attend many scheduled appointments for substance abuse treatment and mental health treatment, their continued drug use, [the respondent father's] involvement with criminal activity, and their failure to obtain adequate housing and stable employment during this time. [The respondents] never acknowledged their issues so that they could effectively address them."

Specifically addressing the respondent mother's argument that her rehabilitation had been hampered by the department's inadequate reunification efforts, the court stated the following: "[The respondent mother] contends that the [department's] efforts at reunification

not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required, (2) termination is in the best interest of the child and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

were inadequate because it failed to refer her for individual counseling, specifically, for sexual assault victims. Although the [department] did not refer [her] to a sexual assault counselor, [she] was referred for mental health treatment in January and May, 2005. The [department] specifically referred [the respondent mother] for individual counseling . . . pursuant to Dr. [Stephen] Humphrey's recommendation. . . . In addition to mental health counseling, [the respondent mother] was also provided with substance abuse testing and treatment. She missed numerous appointments and failed to fully engage in the treatment services provided."[4]

In assessing the respondents' rehabilitation, the court found that "[the respondents] continued to test positive for drugs during this time, and they did not have stable housing or employment. [The respondent father] continued to engage in criminal activity during this time frame as evidenced by his incarceration between June 23, 2005, and July 13, 2005. . . . Despite their lack of attendance at the scheduled appointments and effective participation in treatment between December, 2004, and November 8, 2005, the [department] continued after November 8, 2005, to refer them to numerous [services], but they continued to miss appointments, abuse substances, and engage in criminal activity. . . . Furthermore, it is unforeseeable that [the respondents] can establish a degree of rehabilitation that is sufficient to parent Sarah within a reasonable time after November, 2005. Both have acknowledged that they are unable to care for Sarah and won't be in the near future." (Citation omitted.)

Having determined that the department made reasonable efforts to reunify the family and that " 'the level of rehabilitation that [the respondents have] achieved,

---

[4] Srephen Humphrey, a psychologist, performed an evaluation of the respondents in June, 2005, and February, 2006.

if any, falls short of that which would reasonably encourage a belief that at some future date [they] can assume a responsible position in Sarah's life,' " the court then determined that termination was in the best interest of Sarah. The court considered all testimony and documentary evidence and made its decision on the basis of the following factors: (1) the timeliness, nature and extent of the services offered, provided and made available to the respondents and to Sarah by the department, (2) whether the department had made reasonable efforts to reunite the family, (3) the terms of the court order entered into and agreed on by the petitioner and the respondents, and the extent to which all the parties have fulfilled their obligations under such order, (4) the feelings and emotional ties of Sarah to the respondents and to Suzanne W., (5) Sarah's age, (6) the efforts each respondent had made to adjust his or her circumstances, conduct or conditions to make it in the best interest of Sarah to return home in the foreseeable future and (7) the extent to which each respondent had been prevented from maintaining a meaningful relationship with Sarah by the unreasonable act or conduct of the other respondent, by any other person or by economic circumstances.[5] The court also "balanced

---

[5] General Statutes § 17a-112 (k) provides in relevant part: "[I]n determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order, (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the

[Sarah's] intrinsic need for stability and permanency against the potential benefit of maintaining a connection with her biological parents." The record amply supports the court's determination that termination of the respondents' parental rights was in Sarah's best interest. Therefore, we conclude that it was not clearly erroneous for the court to have found that the department made reasonable efforts to reunite the family, that the respondents lacked the ability to assume a responsible position in Sarah's life within a reasonably foreseeable time and that it was in the best interest of the child to terminate the parental rights of the respondents.

### III

The respondents next claim that the court improperly terminated their parental rights without findings made by a jury in violation of their constitutional right to due process. We disagree.

Because the respondents did not preserve this claim at trial, they request review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[6] They argue

foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

[6] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

that if this court engaged in the three part balancing test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 334–35, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976),[7] we would conclude that a parent must be entitled to a jury trial whenever there is a termination of parental rights. We note that the respondent father has failed to provide an analysis under *Golding*. Further, both respondents failed to provide adequate and relevant legal authority to support their contention that they, as parents in a termination trial, are entitled to trial by jury as guaranteed by the state and federal constitutions.[8] "[W]e are

[7] "The United States Supreme Court analyzes claims of procedural due process in accordance with the three part test set forth in *Mathews* v. *Eldridge*, [supra, 424 U.S. 334–35]. The Connecticut Supreme Court uses the same test. *Sassone* v. *Lepore*, 226 Conn. 773, 781, 629 A.2d 357 (1993). That test requires a consideration of the private interest that will be affected by the official action, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (Internal quotation marks omitted.) *Santana* v. *Hartford*, 94 Conn. App. 445, 469–70, 894 A.2d 307 (2006), aff'd, 282 Conn. 19, 918 A.2d 267 (2007).

"Due process does not mandate full evidentiary hearings on all matters, and not all situations calling for procedural safeguards call for the same kind of procedure. . . . So long as the procedure afforded adequately protects the individual interests at stake, there is no reason to impose substantially greater burdens . . . under the guise of due process." (Citation omitted; internal quotation marks omitted.) *GMAC Mortgage Corp.* v. *Glenn*, 103 Conn. App. 264, 275, 931 A.2d 290 (2007). "The bottom-line question is whether the denial rendered the [proceeding] fundamentally unfair in view of the *Mathews* factors." *In re Shaquanna M.*, 61 Conn. App. 592, 606, 767 A.2d 155 (2001).

[8] We further note that the legislature has provided, in General Statutes § 45a-717 (h), that "[e]xcept in the case where termination is based on consent, in determining whether to terminate parental rights under this section, *the court shall consider and shall make written findings regarding*: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by a child-placing agency to facilitate the reunion of the child with the parent; (2) the terms of any applicable court order entered into and agreed upon by any individual or child-placing agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (3) the feelings and emotional ties of the child with respect to the child's parents, any guardian of the child's

not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Blango*, 103 Conn. App. 100, 116 n.11, 927 A.2d 964, cert. denied, 284 Conn. 919, 933 A.2d 721 (2007). Therefore, we decline to review the respondents' claim.

## IV

Finally, the respondent father argues that the court improperly placed the burden of proof on the respondents with respect to the motion to revoke commitment and to transfer guardianship and with respect to the dispositional phase of the termination proceeding. We disagree.

The respondent father requests plain error review of his claim. "The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will

person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (4) the age of the child; (5) the efforts the parent has made to adjust such parent's circumstances, conduct or conditions to make it in the best interest of the child to return the child to the parent's home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (6) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent." (Emphasis added.) General Statutes § 45a-717 (h).

result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Smith*, 275 Conn. 205, 240, 881 A.2d 160 (2005). We conclude, after reviewing the court's memorandum of decision, that the respondent father's claim is without any merit. Therefore, he is not entitled to plain error review of his claim.

The judgment is affirmed.

In this opinion the other judges concurred.