IN RE SHANAIRA C.*
(SC 18136)

Rogers, C. J., and Norcott, Palmer, Vertefeuille and McLachlan, Js.**

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** The listing of justices reflects their seniority status on this court as of the date of oral argument.

This case was argued prior to the implementation of the policy of this court to hear all cases en banc.

Argued March 16, 2009—officially released August 10, 2010

*Roseann Canny*, for the appellant (intervenor Stephanie E.).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman* and *Patricia B. Johnson*, assistant attorneys general, for the appellee (petitioner).

*Marcia McCormack*, for the appellee (respondent mother).

*Rosemarie T. Weber*, for the appellee (respondent father).

*Trudy Condio*, for the minor child.

*Sarah Healy Eagan* and *Martha Stone* filed a brief for the Center for Children's Advocacy, Inc., as amicus curiae.

*Opinion*

PALMER, J. The dispositive issue in this certified appeal is whether the Appellate Court properly affirmed the judgment of the trial court, which revoked the com-

mitment of the minor child, Shanaira C., to the custody of the petitioner, the commissioner of children and families (commissioner), and awarded sole custody of Shanaira to the respondent Maria R., Shanaira's biological mother. Specifically, we must determine whether the Appellate Court properly concluded that the intervenor in the underlying neglect action, Stephanie E. (intervenor), did not have a right to call and cross-examine witnesses and otherwise to participate fully at the hearing on the commissioner's motion to revoke Shanaira's commitment. The intervenor contends that she was improperly denied that right both as a matter of procedural due process and under General Statutes § 46b-129 (m),[1] both of which, the intervenor maintains, require a full evidentiary hearing on any contested motion to revoke commitment. We agree with the intervenor's statutory claim[2] and, therefore, need not reach her constitutional claim. Accordingly, we reverse the judgment of the Appellate Court.

Many of the relevant facts and procedural history, which are undisputed, are set forth in the opinion of the Appellate Court. "On March 28, 2006, the commissioner filed a neglect petition and motion for an order of temporary custody of Shanaira on the basis of allegations

---

[1] General Statutes § 46b-129 (m) provides: "The commissioner, a parent or the child's attorney may file a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interests of such child or youth, the court may revoke the commitment of such child or youth. No such motion shall be filed more often than once every six months."

Although § 46b-129 (m) was the subject of minor, technical amendments in 2006; see Public Acts 2006, No. 06-102, § 9; which became effective on October 1, 2006, those amendments have no bearing on the merits of this appeal. We refer to the current revision of the statute for ease of reference.

[2] As we explain more fully in part II of this opinion, the intervenor also relies on the rules of practice and case law to support her claim under § 46b-129 (m). In the interest of simplicity, we refer to the intervenor's claim under § 46b-129 (m), the rules of practice and case law as the intervenor's statutory claim.

of medical and educational neglect, as well as domestic violence and drug abuse by the [respondent] father. The court granted the order. At that time, Shanaira had been residing with her father and his girlfriend, the intervenor. On April 3, 2006, the intervenor filed a motion to intervene, which was granted by the court [*A. Santos, J.*] on May 9, 2006. On July 6, 2006, the intervenor filed a motion to transfer guardianship of Shanaira to herself, and, on September 18, 2006, she filed a motion for visitation. The court consolidated the trial of these motions with the trial of the neglect petition.

"After three days of trial, on October 17, 2006, the court [*Wollenberg, J.*][3] adjudicated Shanaira neglected. The court also denied the intervenor's motions for guardianship and visitation. On November 2, 2006, the court committed Shanaira to the custody of the commissioner. The court continued the matter to December 15, 2006. In doing so, the court expressed its intention to send Shanaira to Florida to live with the respondent mother.

"On December 12, 2006, the commissioner filed a motion to revoke the commitment of Shanaira on the ground that reunification with the respondent mother, in Florida, was in the child's best interest. The motion to revoke was heard on December 15, 2006, and all parties were present. The commissioner submitted to the court a status report, a report from Shanaira's therapist and a report from the [respondent] mother's therapist. The intervenor opposed the motion to revoke and informed the court that she would be calling witnesses, including her [own] mother and Shanaira's aunt, who was also [Shanaira's] foster mother. [The intervenor explained that the testimony of those witnesses would

---

[3] Hereinafter, all references to the trial court are to the court, *Wollenberg, J.*, unless otherwise indicated.

'show that there ha[d] been a terrible decline in [Shanaira's] behavior and her schoolwork,' and that this 'new evidence' of a 'significant deterioration' in Shanaira's well-being bore directly on the issue of whether revoking Shanaira's commitment was in her best interest.] The attorney for [Shanaira] also indicated that she [planned on calling] one witness, [namely] Shanaira's schoolteacher. [The court ruled that the intervenor had no standing because, in the court's view, her only legally cognizable interest was her interest in becoming Shanaira's guardian, and the court already had decided that issue against the intervenor. Although] [t]he court allowed testimony from Shanaira's aunt[4] and teacher [it essentially did not allow the intervenor to call or question those or any other witnesses,[5] including the intervenor's mother, who never testified. Furthermore, the court itself examined the witnesses who did testify with little or no input or questioning from the parties]. On the basis of the reports submitted by the commissioner, the testimony and the statements of counsel, including that of the intervenor, the court found that revocation of the commitment was in Shanaira's best interest and granted sole custody of Shanaira to the respondent mother." *In re Shanaira C.*, 105 Conn. App. 713, 716–17, 940 A.2d 817 (2008).

The intervenor appealed to the Appellate Court from the trial court's judgment, claiming that, as a proper party to the action, her due process rights were violated because the court had failed to hold a full evidentiary hearing on the motion to revoke and because she had been precluded from calling and cross-examining witnesses and otherwise participating meaningfully in the hearing that was held. See id., 719. The intervenor also

---

[4] As Shanaira's foster mother, Shanaira's aunt had a right to be heard at this hearing pursuant to § 46b-129 (o).

[5] The court permitted the intervenor's counsel to make a brief statement at the close of the evidence.

maintained that § 46b-129 (m), Practice Book (2006) § 35a-14 (c),[6] and applicable case law also "clearly" anticipate that a hearing on a motion to revoke shall be a full, adversarial hearing and that the trial court improperly had denied her the right to such a hearing. Finally, the intervenor asserted that the trial court had abused its discretion in revoking Shanaira's commitment before making a finding, as § 46b-129 (m) requires, that cause for commitment no longer existed. See id., 722. The Appellate Court, with one judge dissenting, affirmed the judgment of the trial court.[7] Id., 723.

Before addressing the merits of the intervenor's appeal, however, the Appellate Court addressed the

---

[6] Practice Book (2006) § 35a-14 (c) provides: "Whether to maintain or revoke the commitment is a dispositional question, based on the prior adjudication, and the judicial authority shall determine whether it is in the best interest of the child to maintain or revoke upon a fair preponderance of the evidence. The party seeking to maintain the commitment has the burden of proof that it is in the best interest of the child to maintain the commitment. The party seeking revocation of commitment has the burden of proof that no cause for commitment exists. If the burden is met, the party opposing the revocation has the burden of proof that revocation would not be in the best interest of the child. If a motion for revocation is denied, a new motion shall not be filed by the movant until at least six months has elapsed from the date of the filing of the prior motion unless waived by the judicial authority."

In 2009, the provisions of Practice Book (2006) § 35a-14 (c) were transferred, with amendments, to Practice Book § 35a-14A. Because Practice Book (2006) § 35a-14 was the applicable provision for purposes of the disposition of the neglect petition, we refer to that provision in our analysis.

[7] We note that the Appellate Court majority addressed the intervenor's due process claim but did not address her claim that she also was entitled to such a hearing under § 46b-129 (m), Practice Book (2006) § 35a-14 (c), and relevant case law. See In re Shanaira C., supra, 105 Conn. App. 719–22. We surmise that the Appellate Court majority did not consider the intervenor's statutory claim because it did not construe the arguments that the intervenor made in her brief as raising such a claim. As we explain more fully hereinafter, Judge Borden, the dissenting judge, concluded otherwise and addressed the intervenor's statutory claim in addition to her due process claim. Id., 729, 731–33. Although the brief that the intervenor filed in the Appellate Court is not a model of clarity on this point, we agree with Judge Borden that the intervenor did raise a statutory claim in that court. Furthermore, the intervenor has raised and briefed that claim in this court, and no party has objected to our consideration of it.

respondent mother's contention that the intervenor lacked standing to appeal the revocation of Shanaira's commitment because her standing had terminated when the trial court denied her motions for guardianship and visitation and committed Shanaira to the commissioner's custody. Id., 717. The Appellate Court rejected this contention; id., 719; concluding, first, that the intervenor properly had been granted intervenor status in the dispositional phase of the neglect proceeding under Practice Book (2006) § 35a-4[8] for the purpose of, inter alia, exercising her right to oppose the commissioner's motion to revoke Shanaira's commitment as against Shanaira's best interest. See id., 718. The Appellate Court then concluded that the intervenor also had appellate standing because the revocation was adverse to the intervenor's interest in the disposition of the neglect petition. Id., 719.

---

[8] Practice Book (2006) § 35a-4 provides: "(a) In making a determination upon a motion to intervene by any grandparent of the child, the judicial authority shall consider:

"(1) the timeliness of the motion as judged by all the circumstances of the case;

"(2) whether the applicant has a direct and immediate interest in the case.

"(b) Other persons including, but not limited to, siblings may move to intervene in the dispositional phase of the trial and the judicial authority may grant said motion if it determines that such intervention is in the best interest of the child or in the interests of justice.

"(c) In making a determination upon a motion to intervene by any other applicant, the judicial authority shall consider:

"(1) the timeliness of the motion as judged by all the circumstances of the case;

"(2) whether the applicant has a direct and immediate interest in the case;

"(3) whether the applicant's interest is not adequately represented by existing parties;

"(4) whether the intervention may cause delay in the proceedings or other prejudice to the existing parties;

"(5) the necessity for or value of the intervention in terms of resolving the controversy before the judicial authority.

"(d) Upon the granting of such motion, such grandparent or other applicant may appear by counsel or in person. Intervenors are responsible for obtaining their own counsel and are not entitled to appointment of counsel at state expense by the court."

The Appellate Court next addressed the intervenor's contention that the trial court had violated her right to due process by failing to hold a full evidentiary hearing on the motion to revoke commitment at which the intervenor would have been entitled to present evidence and to challenge any evidence presented by an adverse party. Id., 719–22. The Appellate Court concluded that the intervenor had received "all [of] the process that she was due."[9] Id., 722. In reaching its determination, the Appellate Court observed that "the intervenor participated in every aspect of the neglect proceedings, including the revocation hearing. Over the course of the five days of trial on the neglect petition, the intervenor filed motions, cross-examined witnesses, called witnesses on her behalf and made arguments to the court. On the date that the court considered revocation, however, the record reveals that the nature of the intervenor's interest in the case had changed because her previously filed motions for guardianship and visitation had been denied. Therefore, although she still had standing to participate in the continuing dispositional phase of the proceeding, her personal interest in the proceeding was diminished." Id., 720.

The Appellate Court did observe, however, that the intervenor had sought to adduce testimony from her mother and from Shanaira's foster mother at the revocation hearing, and that both of those prospective wit-

---

[9] The Appellate Court majority relied on the three part test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), in framing its due process analysis. See *In re Shanaira C.*, supra, 105 Conn. App. 719–20. As the United States Supreme Court stated in *Mathews*, "identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge*, supra, 335.

nesses were prepared to testify about a significant deterioration in Shanaira's behavior since the last hearing. Id., 720–21. The Appellate Court further observed that, although the trial court had barred the intervenor from calling witnesses at the revocation hearing, the trial court nevertheless did examine Shanaira's foster mother and teacher, eliciting testimony relating to the same time period that the intervenor had intended to address through the testimony that she was barred from presenting. Id., 721. The Appellate Court also noted that the intervenor did not seek to question these witnesses further or otherwise indicate that she would have presented testimony different from that elicited by the court. Id. The Appellate Court stated: "Under these circumstances, it is not apparent that permitting the intervenor's mother to testify or allowing the intervenor to introduce testimony of Shanaira's foster mother . . . would have elicited any facts that were not already before the court. On this basis, and mindful of the diminished personal interest of the intervenor following the denial of her motions for guardianship and visitation, we do not find an erroneous deprivation of due process in [the trial court's denial of] her request to call her own witnesses." Id., 721–22.

The Appellate Court also rejected the intervenor's claim that the trial court abused its discretion in revoking Shanaira's commitment because the court had failed to make a finding, under § 46b-129 (m), that cause for commitment no longer existed. Id., 722, 723. Although the Appellate Court noted that it was unable to determine from the record the trial court's "specific reasons for committing Shanaira to the custody of the commissioner," it was able to determine from the neglect petition "that the allegations of neglect concerned Shanaira's father, with whom Shanaira was living at the time the petition was filed." Id., 723. The Appellate Court further observed that, "[i]n revoking the commit-

ment of Shanaira to the commissioner, the [trial] court talked extensively about the ability of the respondent mother to care for her." Id. Thus, the Appellate Court concluded that, "[a]lthough the [trial] court did not explicitly make a finding that the respondent mother's fitness to care for Shanaira meant that there was no longer a cause for commitment, this is clearly the import of the court's comments, particularly in light of the court's finding that it was in the best interest of Shanaira that the commitment be revoked and that sole custody be granted to the respondent mother. Thus, even on the basis of the sparse record provided by the intervenor . . . the court's conclusion was legally and factually supported." Id.

Judge Borden agreed that the intervenor had standing; id., 724 (*Borden, J.*, dissenting); but dissented from the majority opinion.[10] Id. Addressing the intervenor's statutory claim first,[11] Judge Borden concluded, with respect to a revocation of commitment hearing con-

[10] Before commencing his discussion of the intervenor's claims, Judge Borden made two preliminary observations that guided his analysis. He observed that the hearing on the commissioner's motion to revoke was contested. *In re Shanaira C.*, supra, 105 Conn. App. 730 (*Borden, J.*, dissenting). Thus, Judge Borden concluded that "whatever informal procedures may be desirably employed in uncontested dispositional hearings in such sensitive matters as the placement of children by the juvenile division of the Superior Court" are inapplicable in the present case. Id. Judge Borden also observed that, although the trial court had developed an extensive factual record during the neglect proceedings and clearly indicated its intent to send Shanaira to live with the respondent mother, those facts "did not permit the [trial] court to dispense with the procedural requirements attendant [to] motions to revoke commitment," unless all interested parties had so agreed. Id. Indeed, as Judge Borden further observed, the trial court's intention to revoke Shanaira's commitment was conditioned "on whether new evidence would be produced . . . ." Id., 730–31 (*Borden, J.*, dissenting).

[11] As we previously noted; see footnote 7 of this opinion; Judge Borden concluded that the intervenor had raised a claim of a statutory right to an evidentiary hearing in addition to her due process claim. *In re Shanaira C.*, supra, 105 Conn. App. 729 (*Borden, J.*, dissenting). Thus, in contrast to the Appellate Court majority, Judge Borden addressed the intervenor's statutory claim. Id., 731–33 (*Borden, J.*, dissenting).

ducted pursuant to § 46b-129 (m), that "[i]t is . . . unthinkable that a court would be permitted to determine that the cause for a prior commitment no longer exists and that the best interest of a child requires a different placement without an evidentiary hearing, at least when those sensitive facts are contested." Id., 732 (*Borden, J.*, dissenting). Although Judge Borden acknowledged that § 46b-129 (m) does not explicitly require an evidentiary hearing, he concluded that the provision clearly implies one. Id. Judge Borden also referred to Practice Book (2006) § 35a-14 (c), which, he observed, "governs proceedings on motions to revoke commitment . . . and allocates the varying burdens of proof on the questions of whether the original cause for commitment still exists and what is in the best interest of the child." Id., 732–33 (*Borden, J.*, dissenting). As Judge Borden stated, "[i]t is obvious that allocations of burdens of proof imply an evidentiary hearing." Id., 733 (*Borden, J.*, dissenting). With respect to the issue of whether that requirement had been satisfied in the present case, Judge Borden concluded that it had not. He explained: "The hearing provided by the court lacked the fundamental hallmarks of a proper evidentiary hearing, namely, the right to present witnesses and to examine the witnesses who did testify. The intervenor was not permitted to [produce] or question witnesses, including one witness, the intervenor's mother, who never testified. The intervenor was not permitted to question the witnesses who did testify. The court, with limited exceptions, conducted all of the examinations of those witnesses who were [produced], and the intervenor was not permitted even to ask follow-up questions. This simply was not a proper evidentiary hearing as our law knows it." Id. Finally, Judge Borden concluded that the intervenor's due process rights were violated by virtue of the trial court's failure to hold a full evidentiary hearing at which the intervenor could

call and cross-examine witnesses.[12] See id., 733–35 (*Borden, J.,* dissenting). On the basis of his statutory and constitutional analysis, Judge Borden concluded that the Appellate Court majority should have reversed the trial court's judgment and ordered that a new dispositional hearing be held on the commissioner's motion to revoke Shanaira's commitment.[13] Id., 735 (*Borden, J.,* dissenting).

In the intervenor's appeal to this court following our granting of certification,[14] the intervenor renews the claims that she had raised in the Appellate Court. We agree with the intervenor that she is entitled to prevail on her statutory claim, and, consequently, we need not reach her constitutional claim. Accordingly, we reverse the judgment of the Appellate Court.

I

We first address the claim of the commissioner and the respondent mother that the intervenor lacked standing to participate in the hearing on the commissioner's motion to revoke Shanaira's commitment and that she lacks standing to bring this appeal. Specifically, the commissioner and the respondent mother assert that,

---

[12] Although not necessary to his resolution of the case, Judge Borden also addressed the intervenor's due process claim because he disagreed with the Appellate Court majority's resolution of that issue. *In re Shanaira C.,* supra, 105 Conn. App. 733–35 (*Borden, J.,* dissenting).

[13] Judge Borden also noted, however, "that [Shanaira then had] been living in Florida with the respondent mother for more than one year. It would be blinking at reality and would be inconsistent with the goal of such a hearing, namely, to determine the child's best interest, to ignore that fact." *In re Shanaira C.,* supra, 105 Conn. App. 735–36 (*Borden, J.,* dissenting). Judge Borden therefore urged "that the dispositional hearing focus on the . . . status of [Shanaira] and what [was] in her best interest at the time of the new hearing." Id., 736 (*Borden, J.,* dissenting).

[14] We granted the intervenor's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly affirm the trial court's judgment revoking the commitment of Shanaira . . . to the commissioner . . . and granting sole custody to the [respondent] mother?" *In re Shanaira C.,* 286 Conn. 917, 945 A.2d 977 (2008).

once the trial court denied the intervenor's motions for guardianship and visitation and committed Shanaira to the custody of the commissioner, the intervenor no longer had a sufficient interest in the case to satisfy the threshold standing requirement. According to the commissioner and the respondent mother, the intervenor, having been divested of her status as a party, had no right to participate in the revocation hearing. We disagree.

Under Practice Book (2006) § 35a-4 (b),[15] the trial court may grant intervenor status in connection with a neglect petition upon a finding that "such intervention is in the best interest of the child or in the interests of justice." In the present case, the trial court, *A. Santos, J.*, granted the intervenor's motion to intervene after concluding that her participation in the proceedings as a party was in Shanaira's best interest due to the exceptionally close relationship that the intervenor had maintained with Shanaira for at least the preceding two years. The evidence established, in particular, that Shanaira referred to the intervenor as "[m]ommy," that the intervenor had cared for Shanaira over that two year period and that Shanaira had expressed a desire to live with the intervenor. That evidence fully supported the conclusion that Shanaira's best interest would be served by granting the intervenor party status in the neglect proceedings.

The Appellate Court succinctly explained why that intervention determination also pertained to the intervenor's right to participate in the litigation involving the motion to revoke Shanaira's commitment to the custody of the commissioner and in any appeal from

[15] Practice Book (2006) § 35a-4 falls within chapter 35a of the Practice Book, which governs "hearings concerning neglected, uncared for and dependent children and termination of parental rights . . . ." The present case concerns the disposition of a neglect petition and, therefore, falls within the scope of chapter 35a.

an adverse decision on that motion. "Practice Book [2006] § 35a-4 permits intervention in the dispositional phase of the trial. Disposition in a neglect petition may take one of a number of forms, including return to parents, return to parents with a protective order, foster care placement, or the initiation of proceedings to terminate parental rights. . . . Whether to maintain or revoke the commitment is a dispositional question . . . . Practice Book [2006] § 35a-14 (c).

"[In the present case], although the commitment of Shanaira to the custody of the commissioner was a disposition,[16] the [trial] court indicated that the commitment was temporary and continued the matter to December 15, 2006, with the stated intention of transfer-

[16] We note that Practice Book § 35a-4 was the subject of amendments in 2009, including the addition of subsection (e), which provides: "When a judicial authority grants a motion to intervene in proceedings concerning a pending neglect or uncared for petition, the judicial authority may determine at the time of disposition of the petition whether good cause exists to permit said intervenor to participate in future proceedings as a party and what, if any further actions, the intervenor is required to take." Practice Book (2009) § 35a-4 (e). The commentary to Practice Book (2009) § 35a-4 provides in relevant part: "New subsection (e) clarifies that intervenors may continue to participate in postdisposition proceedings only with the approval of the judicial authority." Although the commentary indicates that this amendment was intended to clarify, rather than to change, the governing law, we note that this amendment had not been adopted either at the time of the trial on the neglect petition in 2006 or when the Appellate Court issued its decision in 2008. Indeed, the commissioner makes only passing reference to this provision in her brief filed with this court. Moreover, although a commitment to the commissioner typically would dispose of a neglect petition, the record in the present case clearly indicates that Shanaira's commitment to the commissioner was not intended to dispose of the neglect petition because the trial court expressly stated that that commitment would be temporary. Under the particular facts presented, therefore, it reasonably may be maintained that the hearing on the commissioner's motion to revoke Shanaira's commitment was not a postdispositional proceeding within the meaning of Practice Book (2009) § 35a-4 (e). We note, finally, that, at the time of the commitment, the trial court did not indicate whether, and, if so, to what extent, the intervenor would be allowed to participate in any further dispositional hearing. In light of the foregoing, we do not apply Practice Book (2009) § 35a-4 (e) to the present case.

ring custody of Shanaira to the respondent mother on that date. The intervenor objected to the revocation of the commitment and the transfer of custody to the respondent mother, contending that it was not in Shanaira's best interest. Because the revocation of commitment is a step in the dispositional phase of a neglect petition and, in this case, was a necessary step in facilitating the court's intended disposition, the intervenor was a proper party to that proceeding.

"Appellate standing is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . . Because the [trial] court's [revocation of] the commitment was adverse to the intervenor's interest in the disposition of the neglect petition, the intervenor has standing to bring this appeal." (Citations omitted; internal quotation marks omitted.) *In re Shanaira C.*, supra, 105 Conn. App. 717–19.

The commissioner and the respondent mother nevertheless contend that the trial court properly concluded that the intervenor no longer had standing to participate in the proceedings once her motions for transfer of guardianship and visitation had been denied. We disagree. The intervenor was not permitted to intervene merely for the purpose of litigating those motions.[17]

[17] It is true, as the commissioner asserts, that intervention may be granted limited to certain discrete issues, and, therefore, an intervenor may be dismissed once those issues have been resolved. See, e.g., *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 152, 758 A.2d 916 (2000) ("[a] court has the authority to grant intervention limited to particular issues, and such limited intervention is not intended to allow enjoyment of all the prerogatives of a party litigant"). Indeed, in *Rosado*, the intervenors had sought intervention "for the well-defined, limited purpose of filing a motion to quash and for a protective order, and otherwise to prevent disclosure of private, confidential information from their . . . personnel file records." (Internal quotation marks omitted.) Id. In the present case, however, no such limitation was placed on the intervenor's participation in the proceedings, and, consequently, the intervenor became a party for all purposes.

Rather, she was permitted to intervene because her participation in the case properly was deemed to be in Shanaira's best interest in light of the nature of the intervenor's relationship with Shanaira. Thus, although we agree with the statement of the Appellate Court in *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 60 Conn. App. 134, 152 n.15, 758 A.2d 916 (2000), that "[a] court . . . has the authority to dismiss intervenors once their interest in the matter has expired," the denial of the intervenor's motions to transfer guardianship and for visitation had no effect on the intervenor's ability to speak to Shanaira's best interest with respect to the revocation of Shanaira's commitment to the custody of the commissioner and, ultimately, the transfer of custody to the respondent mother. We conclude, therefore, that the trial court had inadequate reason to strip the intervenor of her standing for purposes of the hearing on the commissioner's motion to revoke Shanaira's commitment. Because the trial court's disposition of the neglect petition was adverse to the intervenor's interest, she also has standing to appeal from the judgment of that court.[18]

II

With respect to the merits of the intervenor's claim, she maintains, in essence, that we should reverse the judgment of the Appellate Court for the reasons set

[18] The commissioner relies on *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002), for the proposition that, when "fundamental rights are implicated . . . standing serves a function beyond a mere jurisdictional prerequisite"; id., 219; and that, as a result, "any third party . . . seeking visitation must allege and establish a parent-like relationship as a jurisdictional threshold . . . ." Id., 222. We note that this rule has been extended to the intervention of third parties in custody proceedings. *Fish* v. *Fish*, 285 Conn. 24, 44, 939 A.2d 1040 (2008). In the present case, however, the evidence established that a parent-like relationship existed between the intervenor and Shanaira. Thus, the intervenor's status as a nonrelative, even when seeking guardianship and visitation, does not give rise to any constitutional concern.

forth by Judge Borden in his dissenting opinion.[19] We agree with the intervenor that she had a statutory right to an evidentiary hearing and that she was deprived of that right. Accordingly, we need not address the intervenor's constitutional claim.[20] See, e.g., *State* v. *Ritrovato*, 280 Conn. 36, 50, 905 A.2d 1079 (2006) ("we must be mindful that [t]his court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case" [internal quotation marks omitted]).

The following facts and procedural history are necessary to our resolution of this claim. At the conclusion of the third day of trial on October 17, 2006, the trial court found Shanaira to be neglected and directed the parties to present evidence on the proper disposition of the neglect petition and, in particular, on the issue of whether Shanaira should be placed with her mother in Florida. The court scheduled the next trial day for November 2, 2006.

On that day, the court heard testimony from Janet Feliciano, a social worker employed by the department of children and families (department). Feliciano testified about a report that she had prepared concerning the respondent mother and her observations of Shanaira's interactions with her mother. Feliciano testified that it was the position of the department that sole custody and guardianship of Shanaira should be transferred to

[19] Both Shanaira and the respondent father submitted briefs to this court essentially adopting the arguments set forth by the intervenor. In addition, we granted the application of the Center for Children's Advocacy, Inc. (Center), for permission to appear as amicus curiae, and the Center filed a brief in which it maintained, as does the intervenor, that principles of due process, along with our statutory scheme as supplemented by the rules of practice and relevant case law, require a full evidentiary hearing on a contested motion to revoke a child's commitment.

[20] We also need not reach the intervenor's claim that the trial court abused its discretion in revoking Shanaira's commitment without explicitly determining whether cause for commitment continued to exist.

the respondent mother, and that her commitment to the custody of the commissioner was not necessary. Following the testimony of Feliciano, who was the only witness that day, the trial court declined to transfer sole custody of Shanaira to her mother in Florida and, instead, committed Shanaira to the custody of the commissioner. The court explained, however, that it was likely to transfer custody of Shanaira to the respondent mother in the relatively near future but that Shanaira would remain in Connecticut until at least the next hearing date. The court indicated that proceeding in that manner would be best for Shanaira and would provide an opportunity for the court to assure itself that Shanaira was ready for the move to Florida. The court scheduled the next hearing for December 15, 2006.

At the December 15, 2006 hearing on the motion to revoke, the intervenor sought to call witnesses and otherwise to participate in the hearing. Specifically, the intervenor sought to call her mother[21] and Shanaira's foster mother, claiming that their testimony would demonstrate a marked deterioration in Shanaira's behavior and schoolwork. Because the court did not believe that the intervenor had standing at that stage of the proceedings, the intervenor's mother was not allowed to testify. The court did permit the foster mother to make a statement but did not permit any questioning by counsel. Shanaira's attorney then called Shanaira's teacher, Mary F., as a witness. The court conducted an examination of Mary F., and Shanaira's attorney also was permitted to question Mary F. briefly, after which the court conducted some follow-up questioning.

The court then heard from counsel regarding the motion to revoke commitment. After the other parties had been heard, counsel for the intervenor asked for

---

[21] The intervenor's mother previously had been granted temporary custody of Shanaira.

the same opportunity, and the following exchange occurred:

"The Court: . . . I'll hear you out of respect for you, and that's all. I don't think you have standing . . . .

"[Counsel]: Your Honor, I would just say there are some things that are troubling. [You've] got status reports. [You've] got a social study regarding the motion to revoke. The department knew that—heard from [the foster mother] that things—the behavior of this child since she went to Florida has really deteriorated. But you don't see that in there. They mentioned her reading in school, but they don't mention that she may, you know, have to—she's really low in everything, Your Honor. That's a concern. And, also, this social study that goes with the motion to revoke does not even mention [the respondent] mother's boyfriend. I knew when we were in court the last time—

\* \* \*

"The Court: You keep saying, '[t]his is of concern.' This is of concern to whom?

"[Counsel]: It's of concern to my client [the intervenor] regarding the welfare of this child.

"The Court: Who has, as far as today goes . . . very little, if any, part in the picture of her life.

"[Counsel]: But she still is a party, Your Honor.

"The Court: And she's still interested?

"[Counsel]: She is.

"The Court: Well, why don't we have fifteen or twenty people come in and spend five minutes telling me something? I'm sure we could find people who are interested.

\* \* \*

"[Counsel]: . . . [T]here are services that need to be in place in Florida. There is no provision . . . for the

child having her own therapist. [The respondent mother] hasn't completed parenting [instruction], there are more issues now with the behavior problems, the academics, and it just seems as if the department did contact [social services] in Florida. They did a home study. There is a new law, a federal law out, that they have to speed up these [interstate commitments]. Just to send a child down there with these problems, you want to ensure the services are being provided for her and the family, that they are complying for the best interest of this child, Your Honor. And she is with her [foster mother] now, whom she has known and lived with all her life. I think it really would be important, if you are inclined to grant the motion to revoke, [that] there should be some oversight of what will happen in Florida. Thank you."

After listening to the intervenor's counsel, the court granted the motion to revoke. The court also awarded sole custody of Shanaira to the respondent mother.

Our resolution of the merits of the intervenor's claim requires us to determine whether the trial court properly applied § 46b-129 (m) and Practice Book (2006) § 35a-14 (c) in limiting the intervenor's participation in the dispositional phase of the neglect proceedings.[22] This issue requires us to decide whether § 46b-129 (m) and Practice Book (2006) § 35a-14 (c) contemplate a full evidentiary hearing when, as in the present case, the court is considering the proper disposition of a neglect petition. Such an inquiry presents an issue of statutory interpretation over which our review is plenary. See, e.g., *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 318, 984 A.2d 676 (2009). "When constru-

---

[22] We note, preliminarily, the commissioner's assertion that the intervenor failed to preserve her claims. We disagree with this contention. At trial, the intervenor asserted both that she had a due process and a statutory right to be heard at the revocation hearing.

ing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id., 318–19. In addition, we note that "[t]he interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation." *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 733–34, 830 A.2d 228 (2003). Our review of the language of § 46b-129 (m) and Practice Book (2006) § 35a-14 (c) leads us to conclude that a full evidentiary hearing is required.

General Statutes § 46b-129 (m) provides that "[t]he commissioner, a parent or the child's attorney may file a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interests of such child or youth, the court may revoke the commitment of such child or youth. No such motion shall be filed more often than once every six months." Practice Book (2006) § 35a-14 (c) provides in relevant part: "Whether to main-

tain or revoke the commitment is a dispositional question, based on the prior adjudication, and the judicial authority shall determine whether it is in the best interest of the child to maintain or revoke upon a fair preponderance of the evidence. The party seeking to maintain the commitment has the burden of proof that it is in the best interest of the child to maintain the commitment. The party seeking revocation of commitment has the burden of proof that no cause for commitment exists. If the burden is met, the party opposing the revocation has the burden of proof that revocation would not be in the best interest of the child. . . ."

Although these provisions do not expressly require an evidentiary hearing, we agree with Judge Borden that they implicitly mandate one, at least when a motion for revocation of commitment is contested. See *In re Shanaira C.*, supra, 105 Conn. App. 732–33 (*Borden, J.*, dissenting). In particular, before the commitment may be revoked upon motion, § 46b-129 (m) directs the court to make two findings: first, that there no longer is cause for commitment and, second, that revoking the commitment is in the child's best interest. This provision carries the implication that an evidentiary hearing shall be held because it strongly suggests that evidence must be presented by the moving party to establish facts necessary to warrant revocation of the commitment. Indeed, a determination of the best interest of a child frequently requires an evidentiary hearing. See, e.g., *Berglass* v. *Berglass*, 71 Conn. App. 771, 784, 804 A.2d 889 (2002) ("[t]he court . . . should not have modified weekly visitation without having held an evidentiary hearing to determine whether modification was in the best interest of the child"). In the absence of a waiver of the right to a hearing by all parties who otherwise would be entitled to participate, this approach makes eminent good sense because the determination of a child's best interest is generally a fact

intensive inquiry. See, e.g., *Malave* v. *Ortiz*, 114 Conn. App. 414, 421–22, 970 A.2d 743 (2009) ("[t]he best interest standard . . . is inherently flexible and fact specific and gives the court discretion to consider all of the different and individualized factors that might affect a specific child's best interest"). Moreover, frequently, either the facts or the inferences to be drawn therefrom are disputed by the parties. For these reasons, revocation hearings sometimes entail lengthy proceedings involving multiple witnesses. See, e.g., *In re Cameron C.*, 103 Conn. App. 746, 760, 930 A.2d 826 (2007) (revocation hearing conducted under § 46b-129 [m] occurred over period of fifteen days and involved testimony of thirteen witnesses and admission of forty exhibits), cert. denied, 285 Conn. 906, 942 A.2d 414 (2008).

Similarly, Practice Book (2006) § 35a-14 (c) allocates burdens of proof with respect to whether cause for commitment exists and whether revocation is in the best interest of the child. Specifically, once the party seeking revocation has satisfied its burden of proving that no cause for commitment exists, the party opposing revocation bears the burden of proving that revocation would not be in the best interest of the child. Practice Book (2006) § 35a-14 (c); see also *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 659, 420 A.2d 875 (1979) ("Cleary the burden is [on] the person applying for the revocation of commitment to allege and prove that cause for commitment no longer exists. Once that has been established . . . the inquiry becomes whether a continuation of the commitment will nevertheless serve the child's best interests. On this point, when it is a natural parent who has moved to revoke commitment, the state must prove that it would not be in the best interests of the child to be returned to his or her natural parent."). Insofar as Practice Book (2006) § 35-14 (c) allocates the varying burdens of proof with respect to whether the original cause for commitment still exists

and what is in the best interest of the child, we agree with Judge Borden that the provision clearly indicates that an evidentiary hearing is required because "[i]t is obvious that allocations of burdens of proof imply an evidentiary hearing." *In re Shanaira C.*, supra, 105 Conn. App. 733 (*Borden, J.*, dissenting).

The requirement of a hearing under § 46b-129 (m) and Practice Book (2006) § 35-14 (c) is consistent with previous decisions of the Appellate Court. For example, in *In re Stacy G.*, 94 Conn. App. 348, 892 A.2d 1034 (2006), the court explained that "a natural parent, whose child has been committed to the custody of a third party, is entitled to a hearing to demonstrate that no cause for commitment still exists. . . . The initial burden is placed on the persons applying for the revocation of commitment to allege and prove that cause for commitment no longer exists. . . . If the party challenging the commitment meets that initial burden, the commitment to the third party may then be modified if such change is in the best interest of the child. . . . The burden falls on the persons vested with guardianship to prove that it would not be in the best interests of the child to be returned to his or her natural parents." (Citations omitted; internal quotation marks omitted.) Id., 352 n.4; cf. *In re Justin F.*, 116 Conn. App. 83, 96, 976 A.2d 707 ("In a proceeding to revoke commitment, the moving party has the statutory burden to prove that cause for commitment no longer exists . . . . Notwithstanding this requirement, the record . . . reveals that the parents offered argument, but no evidence, to support their request. It is [axiomatic] that argument is not evidence." [Citation omitted; internal quotation marks omitted.]), cert. dismissed, 292 Conn. 913, 973 A.2d 660, cert. denied, 293 Conn. 914, 978 A.2d 1109 (2009), cert. denied sub nom. *Albright-Lazzari* v. *Connecticut*, 559 U.S. 912, 130 S. Ct. 1298, 175 L. Ed. 2d 1087 (2010); *Kelly* v. *Kelly*, 54 Conn. App. 50, 57–58, 732 A.2d 808 (1999) (trial court improperly denied moth-

er's request for hearing on father's motion for modification of visitation when issue of child's best interest implicated by motion). Because the issue of whether Shanaira should be transferred to the custody of her mother was neither uncontested nor the subject of undisputed facts, the court was required to conduct an evidentiary hearing as the intervenor had requested.

It also is apparent that the intervenor did not receive the hearing to which she was entitled. Once the commissioner satisfied her burden of proving that no cause for commitment existed, the intervenor, who opposed the revocation of commitment, bore the burden of proving that revocation was not in Shanaira's best interest. Only if the intervenor had been afforded the opportunity to present evidence and to examine witnesses would she have had any meaningful possibility of meeting this burden. Although the intervenor was not precluded from participating in the hearing entirely, the limitations that the trial court improperly placed on that participation were significant and deprived her of a genuine opportunity to present her case.

We disagree, finally, with the commissioner's assertion that any impropriety in limiting the intervenor's participation in the hearing was harmless. First, the intervenor was unable to call and question witnesses whose testimony might have caused the court to reach a different conclusion with respect to Shanaira's best interest. Although one of the intervenor's proposed witnesses, namely, Shanaira's foster mother, did testify at the hearing, the intervenor was not permitted to question her, and, therefore, we do not know whether the foster mother's testimony about Shanaira's problems was full and complete. Furthermore, the intervenor's other proposed witness, namely, her mother, never was allowed to testify even though she previously had been granted temporary custody of Shanaira.[23] In addition,

---

[23] The commissioner contends that, because Shanaira's foster mother already had testified about a deterioration in Shanaira's adjustment and

the intervenor was barred from cross-examining witnesses who had been called by other parties, and we simply do not know how such cross-examination might have affected the court's ultimate decision to transfer custody of Shanaira to Shanaira's mother. Finally, in concluding that the intervenor lacked standing to participate in the hearing because her interest in and relationship with Shanaira was too attenuated, it is highly likely that the trial court did not give due consideration to the intervenor's position concerning Shanaira's best interest. For all of these reasons, the commissioner has failed to establish that the limitations that the trial court placed on the intervenor's ability to participate in the hearing in a meaningful way constituted harmless error.

It is important to note, however, that more than three and one-half years have elapsed since Shanaira began residing with her mother in December, 2006. There is no doubt that much has happened in Shanaira's life over that period of time, and, consequently, what is in Shanaira's best interest will depend largely on what has occurred since her move to Florida to live with her mother. Accordingly, we agree with Judge Borden that the focus of the new dispositional hearing must be on Shanaira's status and her best interest at the time of that hearing.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for a new dispositional hearing.

In this opinion the other justices concurred.

well-being, the proffered testimony of the intervenor's mother to that same effect would have been cumulative, and, consequently, its exclusion was harmless. We reject the commissioner's claim because such corroborative testimony from the intervenor's mother, if credited by the trial court, might have affected the court's decision. In other words, we are unable to conclude that there is no reasonable likelihood that the testimony of the intervenor's mother, when viewed in combination with the testimony of Shanaira's foster mother, would not have caused the trial court to take a different approach with respect to its disposition of the neglect petition.