## IN RE NASIA B.*
## (AC 27027)

Schaller, Bishop and Lavine, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 12—officially released October 10, 2006**

*Paula D. Sullivan,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman* and *Stephen G. Vitelli,* assistant attorneys general, for the appellant (petitioner).

*John F. Daly III,* for the appellee (respondent mother).

---

** October 10, 2006, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Lisabeth B. Mindera,* for the appellee (respondent father).

*Gary J. C. Woodfield,* for the minor child.

Opinion

LAVINE, J. The issues in this termination of parental rights appeal are whether the trial court properly granted the respondents' motion to dismiss the case for failure to establish a prima facie case and sua sponte revoked the minor child's commitment to the custody of the petitioner, the commissioner of children and families. On appeal, the petitioner claims that the court improperly failed (1) to view the evidence in the light most favorable to the nonmoving party and improperly granted the respondents' motion to dismiss the petition to terminate their parental rights, and (2) to abide by the requirements of General Statutes § 46b-129 (m) and (o) when it revoked the child's commitment.[1] We agree and therefore reverse the judgments of the trial court.

The following procedural history is relevant to the appeal. On May 27, 2004, the trial court, *Harleston, J.,* granted the petitioner's motion for an order of temporary custody of the child. The court, *Cohn, J.,* adjudicated the child neglected and committed her to the custody of the petitioner on September 22, 2004. On February 8, 2005, the petitioner filed a consolidated petition to terminate the parental rights of the respondent mother and respondent father, alleging that the parental rights of the mother should be terminated for failure to achieve a sufficient degree of rehabilitation pursuant to General Statutes § 17a-112 (j) (3) (B) (i), and that the parental rights of the father should be terminated for abandonment pursuant to § 17a-112 (j) (3) (A), for failure to achieve a sufficient degree of

---

[1] On appeal, the attorney for the child and guardian ad litem adopted the brief and arguments of the petitioner.

rehabilitation pursuant to § 17a-112 (j) (3) (B) (i) and because there was no ongoing parent-child relationship pursuant to § 17a-112 (j) (3) (D). On that same date, the petitioner also filed a motion to review the permanency plan and to maintain commitment for the child. In response to those filings, the respondent father filed an objection to the permanency plan. The motion to review the permanency plan and the petition for termination of parental rights were consolidated.

The trial on the petition to terminate parental rights was held before the court, *Crawford, J.*, on October 3, 2005. At the conclusion of the petitioner's case-in-chief, the respondent parents made an oral motion to dismiss the petition for failure to make out a prima facie case. Judge Crawford granted the motion and rejected the permanency plan, which called for the termination of parental rights and adoption, because she found that the plan was not in the child's best interest. The next day, the court sua sponte opened the judgment of commitment, revoked the child's commitment to the petitioner and ordered the child returned to the custody of the respondent mother effective December 17, 2005, with protective supervision until December 31, 2005. The court required steps for continued reunification services as to both parents.

The petitioner appealed from the court's judgments on October 19, 2005, and on November 22, 2005, filed a motion in the trial court to stay the court's orders pending the appeal. Judge Crawford denied the motion for stay but ordered the commitment revocation postponed until January 30, 2006. On December 21, 2005, the petitioner filed a motion for review of the denial of the motion for stay and a motion for stay in this court. This court stayed the trial court's orders revoking the child's commitment, protective supervision and unsupervised visitation pending the disposition of this appeal.

The record of the testimony given[2] and the exhibits entered at trial reveal that the petitioner presented the following evidence. The family first came to the attention of the department of children and families (department) when it investigated reports of domestic violence. On May 25, 2004, when the child was three years old, she witnessed her mother's attempted suicide and consequently entered the care of the petitioner pursuant to a ninety-six hour hold. At the time, the respondent parents, who are not married, were not living together. The child was placed in foster care and later was moved to another foster family where she remains.

The respondent mother has a history of substance abuse and mental health issues. The petitioner presented the mother with various programs and opportunities to address both of those issues, as well as her parenting skills. Until the petitioner filed the petition to terminate her parental rights, the mother's participation in these programs and her efforts to complete reunification steps were sporadic. She continued to test positive for marijuana use even while she was pregnant with a second child. The mother had been dismissed from some programs because she failed to abide by the rules and frequently had nowhere to live. She was unemployed. She gave birth to a second child, whose father is not the respondent father in this case. The second child was the subject of a neglect petition because his father was incarcerated and not able to provide assistance. The second child is, however, in the custody of the respondent mother under protective supervision. Although she was more compliant with

---

[2] The following individuals testified at trial: the child's foster mother; Kim Mackey, a social worker for the department of children and families; and Anisa Baczek, the acting program coordinator of the Lifeline program at the Wheeler Clinic in Plainville.

completing the court-ordered steps after the termination petition was filed, the respondent mother had not completed all of the ordered steps at the time of trial.

In June, 2004, the respondent father would not reveal his home address to department employees to permit them to inspect his home. Employees of the department communicated with the father at his place of employment, a barber shop. The father has a criminal record and, until the termination petition was filed, refused to participate in drug testing. He did not provide support for the child until he was ordered to do so by the Superior Court. During the summer and fall of 2004, the respondent father refused all services offered by the department and saw the child only a few times. He frequently declined opportunities to visit with her when they were offered to him. After the termination petition was filed, the respondent father visited with the child more regularly and began to take parenting classes and to participate in a substance abuse program.

The child has been residing with her foster mother, a relative of the respondent mother, since October 28, 2004. The foster mother wants to adopt the child. The petitioner filed the petition to terminate the parental rights of the respondents in order to give the child permanency.

I

The petitioner's first claim is that the court failed to view the evidence in the light most favorable to the nonmoving party and improperly granted the respondent parents' oral motion to dismiss the petition to terminate their parental rights. We agree.

After the petitioner presented her case-in-chief, counsel for the respondent mother made an oral motion to dismiss the petition for failure to establish a prima facie case. See Practice Book § 15-8. Counsel for the respondent father joined the motion. Prior to issuing its ruling,

the court stated: "The court, having reviewed the evidence presented and assessed the credibility of the witnesses, finds the following . . . ."

At oral argument before this court, counsel for the respondent mother conceded that the petitioner had presented evidence of the mother's failure to achieve a sufficient degree of rehabilitation, but argued that because the petitioner also had presented evidence of the steps that the mother had taken to achieve such rehabilitation after the termination petition had been filed, the motion to dismiss was granted properly. Indeed, the respondents' arguments on appeal appear to be not so much that the petitioner failed to make out a prima facie case, but that the petitioner could not prevail because the evidence presented was not clear and convincing as to the statutory grounds alleged for termination.[3]

Practice Book § 15-8 provides in relevant part: "If, on the trial of any issue of fact in a civil action tried to the court, the plaintiff has produced evidence and rested his or her cause, the defendant may move for judgment of dismissal, and the judicial authority may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case. . . ." "[W]hether the [petitioner] has established a prima facie case is a question of law, over which our review is plenary." (Internal quotation marks omitted.) *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 605, 821 A.2d 774, cert. denied, 264 Conn. 919, 828 A.2d 617 (2003).

"The standard for determining whether the plaintiff has made out a prima facie case, under Practice Book

---

[3] In the adjudicatory stage of a trial on the termination of parental rights, the statutory grounds alleged for termination must be proven by clear and convincing evidence. See *In re Jermaine S.*, 86 Conn. App. 819, 827, 863 A.2d 720, cert. denied, 273 Conn. 938, 875 A.2d 43 (2005).

§ 15-8, is whether the plaintiff put forth sufficient evidence that, *if believed*, would establish a prima facie case, not whether the trier of fact believes it. . . . For the court to grant the motion [for judgment of dismissal pursuant to Practice Book § 15-8], it must be of the opinion that the plaintiff has failed to make out a prima facie case. In testing the sufficiency of the evidence, the court compares the evidence with the allegations of the complaint. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . [T]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Gambardella* v. *Apple Health Care, Inc.*, 86 Conn. App. 842, 846–47, 863 A.2d 735 (2005).

We take judicial notice of the fact that the child was found neglected by the Superior Court. Viewing the evidence presented in the light most favorable to the petitioner when compared with the allegations in the consolidated petition to terminate the respondents' parental rights, we conclude that the petitioner presented a prima facie case that neither parent had achieved such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a responsible position in the life of the child. See General Statutes § 17a-112 (j) (3) (B) (i). We need not address the other statutory grounds alleged, as proof of one statutory ground is sufficient to terminate parental rights. See *In re Brea B.*, 75 Conn. App. 466, 473, 816 A.2d 707 (2003).

We further conclude that the court improperly granted the motion to dismiss the petition for failure

to make out a prima facie case. As in *Gambardella*, the court here improperly made findings of fact, weighed the credibility of the evidence and testimony and did not, in all instances, take as true the evidence offered and construe it in the light most favorable to the petitioner. See *Gambardella* v. *Apple Health Care, Inc.*, supra, 86 Conn. App. 847. In reaching this conclusion, we offer no view as to whether the evidence after a full trial would have been sufficient to establish by the clear and convincing standard that the parental rights of the respondents should be terminated.

For these reasons, the judgment dismissing the petition to terminate the parental rights of the respondents is reversed.

## II

The petitioner's second claim is that the court failed to abide by the provisions of § 46b-129 (m) and (o) when it sua sponte opened the judgment and revoked the child's commitment.[4] We agree.

The following procedural facts are relevant to this claim. Immediately after the court granted the respondents' motion to dismiss for failure to establish a prima facie case, the court stated that it had reviewed and considered the permanency plan for termination of parental rights and adoption and found, for the reasons stated with respect to the motion to dismiss, that the plan was not in the best interest of the child. The court, therefore, did not approve the permanency plan. The court ordered the parties to return to court the following day to determine the steps to be taken to continue reunification.

On October 4, 2005, following colloquy with counsel and the court's questioning of the department supervisor on the case, the court rendered judgment revoking

---

[4] During oral argument before this court, the respondent parents indicated that they were taking no position with respect to the claim concerning revocation.

the child's commitment on the basis of the evidence presented during the trial on the petition to terminate parental rights. The court ordered that the child's commitment to the petitioner be opened and that the department provide modified protective supervision until December 31, 2005, when the child would be returned to the respondent mother's custody. The court also ordered additional reunification steps.[5]

The application of a statute to a particular set of facts is a question of law. We therefore review the petitioner's claim under the plenary standard of review. See *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 734, 830 A.2d 228 (2003). "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." General Statutes § 1-2z. None of the parties has claimed that either § 46b-129 (m) or (o) as it pertains to this case is ambiguous.

General Statutes § 46b-129 (m) provides: "The commissioner, a parent or the child's attorney may *file a motion* to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interest and welfare of such child or youth, the court may revoke the commitment of any child or youth. No such motion shall be filed more often than once every six months." (Emphasis added.) "[T]he burden is upon the person applying for

---

[5] At the conclusion of the court's issuing orders, counsel for the respondent mother addressed the court: "I am a little confused and, if I may, so I understand, Your Honor started by saying that you were vacating the commitment . . . . And going to protective supervision. . . . Protective supervision means the [respondent mother] has the child back today? Is that what Your Honor intends?"

the revocation of commitment to allege and prove that cause for commitment no longer exists. Once that has been established . . . the inquiry becomes whether a continuation of the commitment will nevertheless serve the child's best interests. On this point, when it is the natural parent who has moved to revoke commitment, the state must prove that it would *not* be in the best interests of the child to be returned to his . . . natural parent." (Emphasis in original.) *In re Juvenile Appeal (Anonymous)*, 177 Conn. 648, 659, 420 A.2d 875 (1979).

In this case, it is undisputed that neither the petitioner, the parents nor the child's counsel filed a motion to revoke the child's commitment. The purpose of requiring written motions is not only to provide for the orderly administration of justice, but also to fulfill the fundamental requirement of due process of law. *Berglass* v. *Berglass*, 71 Conn. App. 771, 783, 804 A.2d 889 (2002). General Statutes § 46b-129 (o) provides: "A foster parent shall have the right to be heard for the purposes of this section in Superior Court in matters concerning the placement or revocation of commitment of a foster child living with such parent. A foster parent shall receive notice of any motion to revoke commitment or any hearing on such motion. A foster parent who has cared for a child or youth for not less than six months shall have the right to be heard and comment on the best interests of such child or youth in any matter under this section which is brought not more than one year after the last day the foster parent provided such care." It is settled law in this jurisdiction that no court properly may adjudicate a matter involving conflicting rights and interests until all persons directly concerned have been given actual or constructive notice of the pending proceeding and a reasonable opportunity to prepare to appear and be heard. See *Egan* v. *Egan*, 83 Conn. App. 514, 518, 850 A.2d 251 (2004).

On the basis of our review of the record and the plain and unambiguous terms of the statute, we conclude that the court improperly opened the judgment of commitment and revoked the child's commitment to the petitioner. The court revoked the child's commitment on the basis of the evidence the petitioner presented at the trial on the consolidated petition to terminate parental rights. No evidence was presented as to whether the cause for the child's commitment no longer existed. Although a trial court has jurisdiction to open a judgment of commitment under § 46b-129 (m) and to revoke the commitment, it may do so only when it adheres to the mandates of the statute. See *Amodio* v. *Amodio*, 247 Conn. 724, 728, 731, 724 A.2d 1084 (1999) (distinguishing jurisdiction from exercise of authority). In this case, neither the parties nor the foster mother had notice that the court was going to open and revoke the child's commitment on October 4, 2005. The parties were not aware that the court intended to revoke the child's commitment on October 4, 2005, and the foster mother was not present at the time the court acted. When the court sua sponte revoked the child's commitment to the petitioner, it acted outside the scope of its authority pursuant to § 46b-129 (m) and (o), which are intended to provide for the orderly administration of justice, protect the due process rights of the petitioner, the respondents and the foster mother, and to protect the best interest of the child. We conclude, therefore, that the court improperly revoked, sua sponte, the child's commitment to the petitioner and reverse the judgment of the trial court.

The judgment dismissing the petition to terminate parental rights is reversed and the matter is remanded for a new trial. The judgment revoking the child's commitment is reversed.

In this opinion the other judges concurred.