******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE HYRUM D. ET AL.*
## (AC 47796)

Bright, C. J., and Moll and Suarez, Js.

*Syllabus*

The petitioner, the Commissioner of Children and Families, appealed from the judgments of the trial court revoking the commitment of the respondent mother's minor children to the custody of the petitioner and returning the children to the custody of the respondent. The petitioner claimed that the court exceeded its statutory authority (§ 46b-129 (m)) when it sua sponte revoked commitment of the minor children to the petitioner's custody when there was no motion pending before it and without providing all parties notice and a full evidentiary hearing. *Held*:

The trial court, in sua sponte soliciting evidence from one party, the respondent, while denying that it was holding an evidentiary hearing, and, by failing to provide the petitioner notice that it intended to take additional evidence on the petitioner's own motion at a status review proceeding, effectively prevented the petitioner from meeting her burden as to the best interests of the children by preventing the petitioner from participating fully in the proceeding, and this court was not persuaded that the trial court's error was harmless.

Argued December 10, 2024—officially released January 3, 2025**

*Procedural History*

Petitions by the Commissioner of Children and Families to adjudicate the respondents' minor children neglected, brought to the Superior Court in the judicial district of Middlesex, Juvenile Matters at Middletown,

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

** January 3, 2025, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

where the respondents entered pleas of nolo contendere; thereafter, the court, *Hon. Juliett L. Crawford*, judge trial referee, rendered judgments adjudicating the minor children neglected; subsequently, the court denied the petitioner's motion to transfer guardianship and the respondents' motion to revoke commitment; thereafter, the court vacated its order denying the respondents' motion to revoke commitment and revoked the commitment of the minor children to the custody of the petitioner, from which the petitioner appealed to this court. *Reversed.*

*Nisa Khan*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellant (petitioner).

*Karen Oliver Damboise*, assistant public defender, for the appellee (respondent mother).

*Opinion*

BRIGHT, C. J. The petitioner, the Commissioner of Children and Families, appeals from the judgments of the trial court revoking the commitment of the minor children, Hyrum D. and Antonio D., to the custody of the petitioner and returning the children to the custody of the respondent mother, Stephanie V. On appeal, the petitioner claims that the court exceeded its statutory authority when it sua sponte revoked commitment of the minor children to the petitioner's custody without providing all parties notice and a full evidentiary hearing. We agree and, accordingly, reverse the judgments of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of this appeal. After the respondent was arrested in connection with an incident in which she was intoxicated on phencyclidine (PCP) and alcohol while caring for Hyrum and Antonio, the petitioner invoked a ninety-six hour

hold on the children due to concerns about the respondent's mental health and substance abuse issues. The children's father, Danny D.,[1] "was out of state at the time." The petitioner sought and obtained ex parte orders of temporary custody for the children, which were sustained on November 27, 2019, and subsequently filed neglect petitions, alleging that they were being denied proper care and attention and that they were being permitted to live under conditions injurious to their well-being. On December 27, 2019, the Department of Children and Families (department) placed the children with Yvonne F. (foster mother) in accordance with the respondent's request.

"On January 12, 2021, [the respondent] and [Danny D.] each entered a nolo contendere plea to the neglect petition. The court . . . accepted each plea, adjudicated the children . . . neglected, committed them to the care and custody of [the petitioner], and ordered updated final steps." At that time, "[i]t was understood that [the respondent's] issues centered around substance use and mental health." "By June 23, 2021, the permanency plan was now transfer of guardianship with a concurrent plan of permanent transfer of guardianship. . . . On May 17, 2022, [the petitioner] filed [a] motion to transfer guardianship. On February 28, 2023, the parents filed a motion to revoke the commitment to [the petitioner] and [to] have their children returned to them." (Citation omitted.)

The court, *Hon. Juliett L. Crawford*, judge trial referee, held a consolidated trial on both motions over the course of several days, beginning on March 3, 2023, and ending on October 16, 2023. On December 14, 2023, the petitioner moved to open the evidence, claiming that, "[o]n November 21, 22 and 23, [2023], the Meriden

---

[1] Danny D. did not participate in the present appeal. Accordingly, all references to the respondent in this opinion are to Stephanie V.

Police Department conducted several investigations . . . concerning [the respondent]. In the course of those investigations, [the respondent] admitted, among other matters, to being homeless and to having suicidal intent."

At a hearing on January 29, 2024, the court granted the motion to open the evidence, and the petitioner submitted three police reports, dated November 21, 22 and 23, 2023, which were admitted as full exhibits by agreement of the parties. The November 21, 2023 police report stated that the respondent's mother, Lissette R., reported that the respondent was causing a disturbance at Lissette's house, that the respondent was homeless, and that she believed the respondent was under the influence of PCP. The November 22, 2023 report stated that the officer was dispatched to Lissette's house for a report of a domestic dispute between the respondent and Lissette and, upon arrival, found the respondent with a knife in her hand. The respondent told the officer that "she wanted to kill herself and that she was planning on cutting herself." As a result, the respondent was transported to a hospital pursuant to a police request for an emergency evaluation. Last, the November 23, 2023 police report stated that the respondent's cousin called the police for an emergency committal because the respondent was sending him suicidal text messages. When officers located the respondent, she was "very emotional," and she was taken to the hospital as an emergency committal for further evaluation. The petitioner also presented testimony from Kaylee Rugar, the department social worker assigned to the children's cases, who testified that the respondent became homeless in November, 2023, when her landlord sold the rental property where she was living, and that the respondent had not obtained stable housing since that happened.

On May 24, 2024, the court issued a memorandum of decision denying the petitioner's motion to transfer guardianship and the parents' motion to revoke commitment. As to the parents' motion to revoke commitment, the court concluded that (1) "the parents met their burden of proof that the cause for commitment no longer exists and [that] it is in the best interests of the children to return them to the care and custody of the [respondent]," and (2) the petitioner "failed to prove that it would not be in the best interests of the children to return them to the mother." The court nonetheless denied the parents' motion to revoke commitment "without prejudice" and explained that it "retains jurisdiction over this matter, and it is thoroughly familiar with the history and evidence in the trial." Finally, the court ordered that "[a]n on the record status review should be scheduled within thirty days."

At the ensuing status review on June 20, 2024, the respondent appeared, but her attorney was not present, and Danny D. did not appear, but his attorney was present. The court proceeded to explain that, when it denied the parents' motion without prejudice, it meant that "any other motions can be filed without waiting [six months]" as required under General Statutes § 46b-129 (m).[2] The court then discussed the police reports from November, 2023, explaining that "there are like gaps [in the evidence]. . . . [The police reports indicate that the respondent] was transported to [a hospital]. No information on what that was about, how long she was there, what was it, was it observation, what were their findings. Nothing. And, so, I'm just indicating that, although a police report is evidence, that by itself was not sufficient, but it was enough where the court felt that it had to pause. So, all that being said—now the question is where we are. I don't know if anybody

_____

[2] General Statutes § 46b-129 (m) provides in relevant part: "No [motion to revoke a commitment] shall be filed more often than once every six months."

wants to offer anything, but I've given you some idea of what the court was thinking in terms of orders, but [I] didn't just want to simply issue the orders in case something wasn't like detailed enough or—but that's essentially where I am. . . . I guess what is pending is really the decision to deny without prejudice.

\* \* \*

"I just wanted to at least give you a sense of where the court is, and I'll hear from you. I've indicated to you what I was considering in terms of some of the orders and how they need to be structured, if we actually need a short hearing to flush out [that] information that I had indicated to you that the court felt should've been available at the time I did grant the hearing on the motion. . . . So, let me hear from you and, you know, hopefully we won't keep the staff much longer, but that's in terms of the next step."

Counsel for Danny D. stated that his client's "position at the time of trial was that the children should be returned to [the respondent], and since that time, I've had no contact with him. So, as far as moving forward, I wouldn't be able to—without him being present or speaking with me, I'm not really in a position to request . . . anything at this point in time."

The court continued the proceeding, stating: "Now, in terms of [the respondent], the court still—I am inclined to have [one] more short hearing scheduled and—so that I can at least get the information because I will reconsider my decision on the denial without prejudice. But it was basically because I didn't have enough information on what happened in November.

"So, you folks, especially counsel for the children—and I realize that [the respondent's] attorney isn't here and [that Danny D. also is not present] . . . . I've indicated to you how I got to where I did and what I look

at and so I'm telling you what I'm considering at this point and—but there's going to be the issue of [the respondent's] stability in terms of housing. I still don't understand the circumstances around the sale and the eviction and what that's about."

The respondent then addressed the court, explaining that she had "moved into another place. [The department] can come to check out my house whenever they feel like it. I'm on probation for the incident with [Danny D.], but he dropped the restraining order. So, I have been in contact with him. He has not been seeing the . . . children, but I have been at every single visit and I'm—now that I'm back inside my—in my place, I've been looking for work and I've been doing everything I have to do with my probation officer and stuff like that."

At that point, the court said it was "ready to issue some orders," but the petitioner's counsel interrupted and noted that the court could not order the petitioner to file a specific permanency plan. The following exchange ensued:

"[The Petitioner's Counsel]: [T]he only issue I'll make, because the court was talking about November, the department had suggested . . . at the time that the incidents in November were important because it was the [respondent's] own statements . . . . And, so, regardless of what [the hospital] might say, this is what the [respondent] herself was saying about where she was in life at that point in time. . . . [T]he only other thing I will say then is if the court does set a hearing, there's been continued ongoing developments. The respondent . . . has just made some representations. There's been additional information that, if the court is to set a hearing, [the petitioner] needs to be clear that all of that information comes in. For example, she's admitted to relapse on substance use and . . . there have been criminal convictions since then. So, there's

a lot of information that, if this court is going to have a new hearing, then it's going to need to hear—

"The Court: No, I—well, actually given what . . . I've heard, I'm pretty sure that the order will not be for a new hearing. . . . I was sort of indicating that the information that I expected at the hearing—

"[The Petitioner's Counsel]: Right.

"The Court: —was more than just the police report[s]. I understand that but—

"[The Petitioner's Counsel]: Okay.

"The Court: —that's actually not an issue at this point.

"[The Petitioner's Counsel]: Oh, okay. So, Your Honor, thank you.

"The Court: Yeah. Anything else then?

"[The Petitioner's Counsel]: I guess I'll wait to hear what the orders actually are and then—

"The Court: Yep. Okay.

"[The Petitioner's Counsel]: Thank you, Your Honor."

Without explanation or notice to the parties that it intended to take evidence at the status review, the court then directed the courtroom clerk to "put [the respondent] under oath." After the oath was administered, the court asked the respondent about a document that the respondent had attempted to give to the court earlier in the proceeding. The respondent explained that the document confirms that she still was in therapy. When the court explained that all parties "have the right to see it" and directed that the document be shared with counsel, the petitioner's counsel engaged in the following exchange with the court:

"[The Petitioner's Counsel]: While the court is giving me an opportunity to look at this, is this now an evidentiary hearing?

"The Court: No. I was just going to ask—there were a couple of things that she said and I just—because you guys are officers of the court, but there's some—a couple of things that she said. I just wanted to have her under oath. That's all. . . .

"[The Petitioner's Counsel]: The [petitioner] . . . has no objection to that letter coming in. . . . [T]he . . . only suggestion is that it be interpreted in [the] context of evidence that did come in during the trial regarding how frequently [the respondent] had been meeting with [the therapist]. The court does have evidence from the trial—

"The Court: Yeah. . . . Anything else? I actually think now that I am ready to issue an order."

The court then vacated its order denying the parents' motion to revoke commitment and granted the motion, ordering that custody of the children be returned to the respondent. The court also increased the respondent's visitation from two to three times each week, until the order returning the children to the respondent was facilitated, and ordered that the foster mother not be involved with those visits. The petitioner's counsel expressed concern that the court had minimal information regarding the respondent's housing and stated that the "court ultimately will probably need an evidentiary hearing because, again, this court's decision is based on the [respondent] having no residence . . . . For the court to learn about whether she even has a place to live, the court's going to have to open up the evidence and learn that info." The court stayed its order revoking commitment until August 31, 2024, and it scheduled a status review for August 23, 2024. At that point, the petitioner's counsel renewed his concerns regarding the

nature of the status review proceeding in the following exchange with the court:

"[The Petitioner's Counsel]: The evidence in the record is [that the respondent] has no place to live.

"The Court: I understand, but I also heard her say, which is part of why I put her under oath—I didn't want her just saying things that she has housing, she has her Section 8, and I believe you said that the department would need time to check things out. . . .

"[The Petitioner's Counsel]: It can't be that . . . the court . . . is relying now on evidence in fashioning its orders, yet the court has said this is not an evidentiary hearing. For the court to rely on the [respondent's] self-representation about Section 8, we don't know how big the apartment is, is it enough to have a five year old and nine year old in there. We don't know these things.

"The Court: I know. That's why there's a stay.

"[The Petitioner's Counsel]: Your Honor . . . . This court needs evidence in the record. If it issues an order without evidence in the record without holding an evidentiary hearing—

"The Court: Look, if you want to file a motion—I indicated to you why I issued the decision I did without prejudice, and the main part had to do with [the motion to open the evidence and] the last report that you submitted where everyone agreed [that] the court would have been remiss in not at least hearing some information on it. But in terms of what the court had before it, I made the decision based on what the court had before it."

The court adjourned shortly thereafter. This appeal followed.

After filing this appeal, the petitioner filed a motion to reargue in the trial court, asserting that the court was

required to hold an evidentiary hearing before granting a contested motion to revoke commitment. As support, the petitioner cited *In re Shanaira C.*, 297 Conn. 737, 758–59, 1 A.3d 5 (2010) (holding that § 46b-129 (m) and what is now Practice Book § 35a-14A "implicitly mandate" that court hold evidentiary hearing "at least when a motion for revocation of commitment is contested"), and *In re Nasia B.*, 98 Conn. App. 319, 330, 908 A.2d 1090 (2006) (holding that "[w]hen the court sua sponte revoked the child's commitment to the petitioner, it acted outside the scope of its authority"). The petitioner argued that the court denied her the opportunity to present evidence that revocation was not in the best interests of the children as of June 20, 2024.

On July 17, 2024, the court issued a memorandum of decision denying the motion to reargue on the papers. The court noted that it had reviewed *In re Shanaira C.* and *In re Nasia B.* and reasoned that "[t]hese cases can be distinguished from the present case, as here a trial was held over several days, the evidence was reopened and further evidence presented, and there was further information provided on the record during the status review. . . . After several days of hearings, the court rendered a decision with the required findings. All parties made representations and provided additional information at the in-court status review. . . . As there were multiple days of evidence and an appeal has been filed, there is no need to toll the period for filing an appeal. Accordingly, the motion to reargue . . . is denied." The petitioner subsequently amended her appeal to challenge the denial of the motion to reargue. This court stayed the judgments revoking the children's commitment pending the final disposition of the petitioner's appeal.[3]

_____

[3] On July 31, 2024, the petitioner filed a motion for stay, requesting that the trial court grant a stay of its June 20, 2024 order until the petitioner's appeal is decided. The trial court heard argument on the motion during the

On appeal, the petitioner claims that the court exceeded its statutory authority when it sua sponte revoked commitment of the minor children when there was no motion pending before it and without providing all parties notice and a full evidentiary hearing.[4] The respondent contends that the court was not required to hold an evidentiary hearing because it already had conducted a trial on the parties' motions and, in the alternative, assuming arguendo that an evidentiary hearing was required, the failure to do so was harmless error.[5] We agree with the petitioner and are not persuaded that the court's error was harmless.

Whether the court exceeded its statutory authority is a question of law subject to plenary review. See *GMAT Legal Title Trust 2014-1*, *U.S. Bank*, *National Assn.* v. *Catale*, 213 Conn. App. 674, 687, 278 A.3d 1057 ("[t]he proper scope of a court's statutory authority . . . presents a question of law over which our review is plenary"), cert. denied, 345 Conn. 905, 282 A.3d 980 (2022).

Section 46b-129 (m) provides in relevant part that the petitioner, "a parent or the child's attorney may file

August 23, 2024 status conference and denied the motion for stay that same day. On August 27, 2024, the petitioner filed a motion for review of that order, and this court sua sponte stayed the judgments pending resolution of the motion for review on August 29, 2024. On September 11, 2024, this court granted the motion for review and ordered that the judgments be stayed pending the final resolution of this appeal.

[4] On appeal, the attorney for the minor children adopted the position and briefs of the petitioner.

[5] The respondent also contends that the petitioner's claim is unpreserved because it was raised for the first time in her motion to reargue. The transcript of the June 20, 2024 proceeding, however, belies this contention, as the petitioner's counsel alerted the trial court to the need for an evidentiary hearing several times before and immediately after the court issued its orders without notice. Thus, we conclude that the petitioner complied with our rules of preservation, which require a party "to alert the trial court to potential error while there is still time for the court to act." (Internal quotation marks omitted.) *Forestier* v. *Bridgeport*, 223 Conn. App. 298, 313, 308 A.3d 102 (2024).

a motion to revoke a commitment, and, upon finding that cause for commitment no longer exists, and that such revocation is in the best interests of such child or youth, the court may revoke the commitment of such child or youth. . . .”

Our Supreme Court has determined that, although the statute does “not expressly require an evidentiary hearing, [it] implicitly mandate[s] one, at least when a motion for revocation of commitment is contested.” *In re Shanaira C.*, supra, 297 Conn. 759. Accordingly, when a motion for revocation of commitment is “neither uncontested nor the subject of undisputed facts, the court [is] required to conduct an evidentiary hearing . . . .” Id., 762.[6]

In *In re Shanaira C.*, the petitioner moved to revoke Shanaira C.’s commitment on the ground that reunification with the child’s mother was in the child’s best interest. Id., 741. The intervenor, who was the girlfriend of the child’s father, “opposed the motion to revoke and informed the court that she would be calling witnesses, including her [own] mother and Shanaira’s aunt, who

---

[6] The court reasoned that, “before the commitment may be revoked upon motion, § 46b-129 (m) directs the court to make two findings: first, that there no longer is cause for commitment and, second, that revoking the commitment is in the child’s best interest. This provision carries the implication that an evidentiary hearing shall be held because it strongly suggests that evidence must be presented by the moving party to establish facts necessary to warrant revocation of the commitment. Indeed, a determination of the best interest of a child frequently requires an evidentiary hearing. . . . In the absence of a waiver of the right to a hearing by all parties who otherwise would be entitled to participate, this approach makes eminent good sense because the determination of a child’s best interest is generally a fact intensive inquiry. . . . Moreover, frequently, either the facts or the inferences to be drawn therefrom are disputed by the parties. For these reasons, revocation hearings sometimes entail lengthy proceedings involving multiple witnesses.” (Citations omitted.) Id., 759–60. The court further observed that what is now Practice Book § 35a-14A, which allocates the burdens of proof with respect to the necessary findings, “clearly indicates that an evidentiary hearing is required because [i]t is obvious that allocations of burdens of proof imply an evidentiary hearing.” (Internal quotation marks omitted.) Id., 761.

was also [Shanaira's] foster mother." (Internal quotation marks omitted.) Id. "[Although] [t]he court allowed testimony from Shanaira's aunt and teacher [it essentially did not allow the intervenor to call or question those or any other witnesses, including the intervenor's mother, who never testified. Furthermore, the court itself examined the witnesses who did testify with little or no input or questioning from the parties]." (Footnotes omitted; internal quotation marks omitted.) Id., 742. After the hearing, "the court found that revocation of the commitment was in Shanaira's best interest and granted sole custody of Shanaira to the respondent mother." (Internal quotation marks omitted.) Id. This court affirmed the judgment, and our Supreme Court granted the intervenor certification to appeal. Id., 743.

On appeal, the intervenor claimed that the trial court improperly denied her the right to call and cross-examine witnesses and otherwise to participate fully at the hearing on the petitioner's motion to revoke Shanaira's commitment pursuant to § 46b-129 (m). Id., 740. Our Supreme Court concluded that "the intervenor did not receive the hearing to which she was entitled. . . . [T]he intervenor, who opposed the revocation of commitment, bore the burden of proving that revocation was not in Shanaira's best interest. Only if the intervenor had been afforded the opportunity to present evidence and to examine witnesses would she have had any meaningful possibility of meeting this burden. Although the intervenor was not precluded from participating in the hearing entirely, the limitations that the trial court improperly placed on that participation were significant and deprived her of a genuine opportunity to present her case." Id., 762. The court rejected the petitioner's harmless error contention because "the intervenor was unable to call and question witnesses whose testimony might have caused the court to reach a different conclusion with respect to Shanaira's best

interest. . . . In addition, the intervenor was barred from cross-examining witnesses who had been called by other parties, and we simply do not know how such cross-examination might have affected the court's ultimate decision . . . ." (Footnote omitted.) Id., 762–63.

The same reasoning applies in the present case, in which the court sua sponte solicited evidence from one party while denying that it was holding an evidentiary hearing. By failing to provide the petitioner notice that it intended to take additional evidence on its own motion at the status review proceeding and by then denying that it was holding an evidentiary hearing, the court effectively prevented the petitioner from meeting her burden as to the best interests of the children. Thus, as in *In re Shanaira C.*, the limitations that the court's ad hoc procedure placed on the petitioner's ability to participate meaningfully in the evidentiary hearing "were significant and deprived [the petitioner] of a genuine opportunity to present her case." Id., 762. Moreover, the court was required to consider the children's best interests as of June 20, 2024, when it revoked the children's commitment. See id., 763 ("the focus of the new dispositional hearing must be on [the child's] status and her best interest at the time of that hearing"). The court, however, denied that it even was required to hold an evidentiary hearing in that regard. Accordingly, we conclude that the court's truncated evidentiary hearing prevented the petitioner from participating fully in the June 20, 2024 proceeding, and we are not persuaded that the court's error was harmless.

The court's actions also were in clear contravention of this court's holding in *In re Nasia B.*, supra, 98 Conn. App. 319. In that case, after the petitioner rested her case-in-chief at the termination of parental rights trial, the trial court granted the respondents' oral motion to dismiss the petition for failure to make out a prima facie case. Id., 322. Immediately thereafter, "the court

stated that it had reviewed and considered the permanency plan for termination of parental rights and adoption and found, for the reasons stated with respect to the motion to dismiss, that the plan was not in the best interest of the child. . . . The court ordered the parties to return to court the following day to determine the steps to be taken to continue reunification.

"[The next day], following colloquy with counsel and the court's questioning of the department supervisor on the case, the court rendered judgment revoking the child's commitment on the basis of the evidence presented during the trial on the petition to terminate parental rights. The court ordered that the child's commitment to the petitioner be opened and that the department provide modified protective supervision until . . . the child would be returned to the respondent mother's custody." Id., 327–28.

The petitioner appealed, claiming, inter alia, that the court "failed to abide by the provisions of § 46b-129 (m) . . . when it sua sponte opened the judgment and revoked the child's commitment." Id., 327. This court agreed, reasoning that, because "neither the parties nor the foster mother had notice that the court was going to open and revoke the child's commitment"; id., 330; the court "acted outside the scope of its authority pursuant to § 46b-129 (m) and ([p]), which are intended to provide for the orderly administration of justice, protect the due process rights of the petitioner, the respondents and the foster mother, and to protect the best interest of the child." Id.

Although the respondent argues, and the trial court concluded, that the present case is distinguishable from *In re Nasia B.* "because a motion to revoke was filed in this matter and the trial court heard testimony and received evidence over six days regarding whether cause for commitment no longer existed," she ignores

that the trial court already had denied that motion on the basis of the evidence in the record as of January 29, 2024. As a result, when the court sua sponte revoked commitment at the June 20, 2024 status review without notifying the parties of its intention to do so, the parties did not have "notice that the court was going to open and revoke the [children's] commitment"; *In re Nasia B.*, supra, 98 Conn. App. 330; and, therefore, they did not have "a reasonable opportunity to prepare to appear and be heard" in that regard. Id., 329. Consequently, because the court improperly held a truncated evidentiary hearing at which it took evidence only from the respondent without providing the parties notice and a reasonable opportunity to be heard on the contested issue, *In re Nasia B.* dictates that the judgments revoking the children's commitment to the petitioner must be reversed.

The judgments revoking the children's commitment are reversed.

In this opinion the other judges concurred.